Argued June 29; reversed July 26, 1932; rehearing granted and
reargued January 24; former opinion set aside and case
affirmed March 28; second petition for rehearing
denied April 25, 1933

## McDOWELL *v.* HURNER

(13 P. (2d) 600, 20 P. (2d) 395)

612

*Robert F. Maguire,* of Portland, for appellant.
*Earl A. Nott,* of McMinnville, for respondent.

BELT, J. On March 12, 1929, Vivian McDowell, a girl 17 years of age, was killed in an automobile collision while riding as a guest of Ernest Hurner, a minor son of Alex Hurner, the defendant. Myrtle Coleman and Ronald Hurner were also riding in the one seat of defendant's Ford roadster at the time of the accident. The collision occurred while these young people were returning to Carlton from McMinnville where they had been attending a basket ball game. The automobile was kept and used for the business, convenience, and pleasure of the Hurner family. The father, who was owner of the car, had given permission to his son to use it for the purpose of attending the basket ball game at McMinnville, but had no knowledge as to who would accompany him. In response to the question,

"Had you ever given any authority to take four people in that car?" the defendant answered, "I had not. I warned him against it". He knew, however, of the custom of his boy in having his schoolmates and friends to ride with him.

Defendant's motion for a directed verdict presents the major question as to whether the "family purpose" doctrine is applicable to the facts of this case. Is the father liable to the guest of his son for the latter's negligence while so driving a family car upon a trip for the son's own pleasure? There is no contention that the son was an incompetent driver or that the machine was in a dangerous or defective condition. The issue is clear cut. Does the family car doctrine apply?

There is a sharp conflict in the authorities in cases where the owner of a car kept for family use is sought to be held liable for the negligence of a member of his family while using it for his own purposes. See cases annotated in 64 A. L. R. 851; Blashfield's Cyc. Automobile Law, Ch. 62, § 9; Berry on Automobiles (6th Ed.) §§ 1473, 1474; Huddy's Cyc. Automobile Law (9th Ed.) § 126. This court, in *Foster v. Farra,* 117 Or. 286 (243 P. 778), unquestionably adopted the family purpose doctrine in its full scope, although the liability of the father in that case could well have been based on the sole charge that the automobile was in a dangerous and defective condition at the time he gave permission to his son to use it. In *Foster v. Farra,* supra, a pedestrian was injured; in the instant case the injury resulting in death was sustained by a guest invited to ride by a member of the family who did not own the car. Furthermore, at the time of the injury, the plaintiff's decedent was riding with three other persons in one seat, in violation of the statute. Under such cir-

cumstances can it reasonably be said that the son was the agent of the father, acting within the scope of his real or apparent authority?

■■ It is a broad general rule that a parent is not liable for the torts of his children. An automobile is not inherently dangerous. It is dangerous only by reason of the manner of its operation. It follows that the liability of the father, if any exists, must be predicated upon the theory of agency. In order to charge the parent with responsibility, it must appear that the relation of principal and agent or master and servant existed between the parent and the child. To say that the son, in taking this trip to McMinnville for the purpose of attending a basket ball game—riding as he was in violation of the law—was engaged in furthering the business or social interests of the father, thereby creating the relation of master and servant, comes near distorting beyond recognition well established principles of agency. If the basis of liability be that the father, in keeping a family automobile, is engaged in the business of furnishing pleasure and recreation to members of his family, he would, with like reason, be responsible for the negligence of his children in the use of golf clubs, baseball bats, and bicycles purchased by him for their pleasure and convenience. Those who differ with such conclusion are obliged to do so on the ground that the automobile is a more dangerous instrumentality. Yet, courts universally hold that automobiles are not inherently dangerous. It would seem, therefore, that this new child of agency called the "family purpose" doctrine was born with the advent of the automobile. It is quite apparent that, on the grounds of public policy and "natural justice," some courts have extended the doctrine beyond fundamental principles of agency. In Minnesota, the courts have

consistently adhered to the doctrine (*Kayser v. Van Nest,* 125 Minn. 277 (146 N. W. 1091, 51 L. R. A. (N. S.) 970), and *Johnson v. Evans,* 141 Minn. 356 (170 N. W. 220, 2 A. L. R. 891)) until they were called upon to apply it to the case of a motorboat purchased by the head of the family for the pleasure of the members of his family: *Felcyn v. Gamble* (Minn.) 241 N. W. 37. The reason assigned for the refusal of the court to apply the doctrine to motorboats, reduced to its ultimate analysis, is that there are more automobiles than motorboats and that the latter are less dangerous. The court said:

"It is evident that in practically all of the decisions the doctrine was applied to automobiles in the interest of justice and as a necessity. The situation as regards motorboats is in no way comparable to that of automobiles".

Thus is exemplified the embarrassment which courts sometimes suffer when they depart from fundamental rules to meet the exigencies of a particular case. True, it may be that, as a matter of public policy, a father who turns a reckless son loose with a high-powered machine assumes the risk and should be held responsible for the acts of the latter, regardless of whether or not they promote the father's interests, but such question is clearly a matter for the legislature rather than the courts. As said in 29 W. Va. Law Quarterly 53: "Indications are not wanting that the courts asserting this doctrine are not entirely satisfied with it and would justify their course on the broad ground of public policy. If the automobile is not a dangerous instrumentality,—if the parental relationship alone is not sufficient to throw the loss on the owner, and if the family purpose doctrine results in an unwarranted warping of the doctrine of respondeat superior, then

no other ground than policy would seem to be available to courts that wish to impose such a liability. But if the whole question is one of conflicting considerations of policy alone, as it appears to be, then its solution is properly within the province of the legislatures, and not of the courts, and should not be arrived at by distorting the principles of agency and torts to fit the case''. Also see, to the same effect, 28 Harvard Law Review 91; 19 Michigan Law Review 543; 25 Michigan Law Review 187; 2 Temple Law Quarterly 232.

■ Assuming, on the authority of *Foster v. Farra*, supra, that, in the instant case, the son was the agent of the defendant owner in the operation of the car, it does not follow that he was acting within the scope of his authority in the transportation of his guest in violation of law. The trial court submitted to the jury, as a question of fact, the issue as to whether the son had the apparent authority to invite this girl to ride in the automobile, but, as we view the record, there was no evidence upon which to base such an instruction. We are unable to conclude that the son had apparent authority to invite any person to violate the statute. It is suggested that this is a matter which could be taken into consideration only with relation to the question of the alleged contributory negligence of the decedent. We do not agree with this contention, as we deem it was also an important factor in determining the scope of the son's authority in using the car. After careful consideration of the authorities, we think the court would not be warranted in extending the family purpose doctrine to the facts in this case. We have found no case which, when the facts are carefully analyzed, goes to such an extreme viewpoint.

■ We are not unmindful that a prima facie case of liability was made upon proof of ownership: *West v. Kern,* 88 Or. 247 (171 P. 413, L. R. A. 1918D, 920), and numerous other cases in this jurisdiction which could be cited. But, when it appeared from the uncontradicted testimony that, in fact, the son was not acting within either the real or the apparent scope of his agency in thus transporting the decedent, the presumption of agency was overcome as a matter of law and it was the duty of the court to have so declared by directing a verdict in favor of the defendant: *Judson v. Bee Hive Auto Service Co.* (on rehearing), 136 Or. 5 (297 P. 1050, 74 A. L. R. 944).

BEAN, C: J., BROWN and CAMPBELL, JJ., concur.

Former opinion set aside and case affirmed on rehearing
March 28, 1933

ON REHEARING
(20 P. (2d) 395)

*Robert F. Maguire,* of Portland (Leland B. Shaw, of Portland, on the brief) for appellant.

*Earl A. Nott* and *W. M. Ramsey,* both of McMinnville, for respondent.

BAILEY, J. The main question presented on the rehearing of this case is whether we should adhere to the family-purpose doctrine in cases involving automobile accidents, as enunciated in *Foster v. Farra,*

117 Or. 286 (243 P. 778), or adopt in lieu thereof the strict agency doctrine which is the yardstick used by many states in measuring parents' liability for the torts of their minor children. In the former opinion in this case it was strongly intimated that the family-purpose doctrine should be overruled as illogical and unsound in principle. It was considered unnecessary either to uphold or to repudiate that doctrine, due to the fact that the deceased was at the time of the accident riding in the front seat of the automobile as one of four passengers, in violation of law and contrary to what is said to have been the express prohibition of the defendant, whose son was driving the automobile.

For over seven years the family-purpose doctrine, or, as sometimes referred to, the family-car doctrine, has been a rule of liability in this state, and the same should not now be overturned unless there is some good and cogent reason for so doing. It is desirable that there be uniformity and stability in our decisions; that we do not declare the law to be one thing today and something else tomorrow; and that we do not deny today relief which we yesterday granted. Yet, on the other hand, we should not, under the cloak of *stare decisis*, pursue a course of action which has been clearly demonstrated unsound in principle and harsh and unjust in application.

With the advent of the automobile, the mode of transportation by slow-moving horse-drawn vehicles soon changed, and with this change came many complications. The present-day demand for greater speed, coupled with the ever increasing use of the automobile in business and for recreation and pleasure, presents new problems which many courts are attempting to meet and solve in a sensible and practical man-

ner. Today in many families an automobile is considered an indispensable adjunct of living. In almost every family possessing an automobile the children over 16 years of age are permitted to, and do, use the car for their own pleasure and convenience. Although the motor vehicle is no longer regarded as inherently dangerous, it "is, potentially, a dangerous instrumentality, as the appalling number of fatalities brought about every day by its operation bear distressing witness": *District of Columbia v. Colts,* 282 U. S. 63 (51 S. Ct. 52, 75 L. Ed. 177).

In *Foster v. Farra,* supra, the rule of liability adopted unanimously by this court, sitting in banc, was expressed as follows:

"As to the other feature of the case, relating to the management of the automobile by the minor son of the defendant Walter H. Farra, while there is a contrariety of opinion upon the question, the rule adopted in several states is, that one who keeps an automobile for the pleasure and convenience of himself and his family is liable for injuries caused by the negligent operation of the machine while it is being used for the pleasure or convenience of a member of his family. As to whether the son was engaged in the father's business, it is the rule, supported by the better weight of authority, that where a father provides an automobile for the purpose of furnishing members of his family with outdoor recreation, the use of the car for such purposes is within the scope of the father's business, analogously to the furnishing of food and clothing or ministering to their health": citing many authorities.

There are, however, many states, and they constitute a majority of those which have directly passed upon the question here involved, which still apply the strict agency doctrine in cases of this kind: that is, that the parent can not be held liable for the torts of

the members of his family committed while operating the automobile for their own pleasure and convenience. It is unnecessary here to cite authorities upholding or opposing these two theories, as the same may be found collected and discussed in the following periodical and texts: 26 Michigan Law Review 864; Huddy's Cyclopedia of Automobile Law (9th Ed.) Vols. 7 and 8, § 126; Berry on Automobiles (6th Ed.) § 1473 and § 1474; *Arkin v. Page,* 287 Ill. 420 (123 N. E. 30, 5 A. L. R. 216).

An attempt to reconcile the two conflicting views on this subject would be utterly futile. The states adhering to the strict agency doctrine consider that the courts, commonly referred to as less conservative, which have adopted and applied the family-purpose doctrine are departing from long-established principles of the law of master and servant or principal and agent, and that any change in this respect should be brought about by legislative action rather than through court decisions. Yet many of those more conservative courts do not hesitate to hold the father liable in cases wherein the minor son or daughter driving the car is accompanied by another member of the family. In such instances the liability of the father is based upon the theory that the member of the family operating the automobile assumes the role of chauffeur and thereby the relationship of master and servant or principal and agent between the father and son or daughter is brought into existence. This appears to be somewhat of a distinction without a difference. In discussing this aspect of the question, the Supreme Court of West Virginia in the case of *Jones v. Cook,* 90 W. Va. 710 (111 S. E. 828), remarked:

''We see no possible ground of difference concerning the owner's liability, whether there be but one

member of the family or all members of the family in the automobile at the time of the negligent injury. If the father makes it his business or affair to furnish members of his family with an automobile for family use, and he maintains it for that purpose, just the same as it is his business to furnish them with food and clothing, or to minister to their health in other ways, then he is in the furtherance of that business just as surely, when a single member of the family is driving it for his own pleasure and convenience, as if all the family were riding in it. Counsel for defendant say that defendant is not liable for the negligence of the stepdaughter in the operation of the automobile in the present case, because it was none of his affair; but we hold that he made it his affair by maintaining the automobile for the very purpose for which she was using it at the time of the injury. He owned the machine, and had the right to say where, how, and by whom it might be used, and implied, if not expressly, authorized the use to which it was put when the accident occurred. The doctrine of agency is not confined to merely commercial business transactions, but extends to cases where the father maintains an automobile for family use, with a general authority, expressed or implied, that it may be used for the comfort, convenience, pleasure and entertainment or outdoor recreation of members of the owner's family. * * * This view was also applied in cases of horse-drawn vehicles, decided before the introduction of the automobile. Schaefer v. Osterbrink (1886), 67 Wis. 495, 58 Am. Rep. 875, 30 N. W. 922; Lashbrook .v. Patten (1864), 1 Duv. (Ky.) 316. It is not a new graft on the law of agency. It is merely applying old principles to new conditions".

The past has witnessed many changes, brought about by court decisions, in the law of master and servant and principal and agent. It is therefore unreasonable to assume that the courts will in the future remain stationary just because some court-made rule

of liability has not heretofore been applied to new and changed conditions. It took no legislation to bring into existence the defenses which a few years past were available to the master, to wit: Fellow-servant doctrine, assumption of risk and contributory negligence. The growth of the doctrine of principal and agent belongs "to a condition of society in which commercial transactions are highly developed". This doctrine was little heard of during the time of Blackstone.

■ Many of the courts in condemning the family-purpose doctrine remark that. the automobile is no longer considered as inherently dangerous, intimating thereby that, if it were otherwise, the parent owning the car would be liable for injury done by a member of his family while driving the same. Although not inherently dangerous, an automobile is, as said by the Supreme Court of the United States, potentially a dangerous instrumentality. In the hands of an inexperienced or careless driver a motor vehicle is nothing short of a public menace. Public policy therefore demands that owners of automobiles be held to the strictest account for any negligence in their operation resulting in injury to others.

In *King v. Smythe,* 140 Tenn. 217 (204 S. W. 296, L. R. A. 1918F, 293), the Supreme Court of Tennessee said:

"It is true that an automobile is not a dangerous instrumentality so as to make the owner liable, as in the case of a wild animal loose on the streets; but, as a matter of practical justice to those who are injured, we cannot close our eyes to the fact that an automobile possesses excessive weight, that it is capable of running at a rapid rate of speed, and when moving rapidly upon the streets of a populous city, it is dangerous to life and limb and must be operated with care. If an instrumentality of this kind is placed in the hands

of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form. The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets, or he can forbid its use altogether. He must know the nature of the instrument and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities. An automobile cannot be compared with golf sticks and other small articles bought for the pleasure of the family. They are not used on public highways, and are not of the same nature of automobiles''.

The following states appear to be definitely committed to the family-purpose doctrine: Arizona, Colorado, Connecticut, Georgia, Iowa, Kentucky, Minnesota, Nebraska, New Mexico, North Carolina, North Dakota, South Carolina, Tennessee, Texas, Washington and West Virginia. In addition to the foregoing there are several other states which have been similarly classed by courts and annotators. New York, Michigan and California are often mentioned as states which have passed legislation in which is incorporated the prin-

ciple of the family-purpose doctrine. The great weight of authority, however, neither upholds nor condemns this doctrine.

The mere fact that the decedent was, at the time of the accident, riding with three other people in the front seat of the automobile in violation of the law, would not, of itself, prevent recovery. The father, as stated in the former opinion, knew the custom of his son with reference to having his school-mates and friends with him while operating the car. He did not, according to his testimony, know of his son's operating the car with three other people in the front seat. In fact, he stated that he had forbidden his son to do so. Ernest Hurner, driver of the car, gave the following testimony:

"Q. You and Ronald and these two girls had been running around in the car a great deal together, hadn't you?

"A. I don't know as you would call it a great deal, but quite often".

There was sufficient evidence in the case to justify submitting to the jury the question of whether or not the defendant knew or should have known of his son's practice in this respect. Accidents quite frequently result from the violation of some traffic law or regulation, and the mere fact that the parent had warned his son against violating the law by exceeding the speed limit or by carrying four people in the front seat would not relieve the father from responsibility under the family-purpose doctrine, unless the one injured thereby was guilty of contributory negligence.

We find no good reason why we should depart from the holding in the case of *Foster v. Farra*, supra. Since that decision there have been four sessions of our state legislature and no attempt has been made to abolish the rule there announced.

The first eleven assignments of error relate to the refusal of the trial court to give certain instructions requested by the defendant and to the exception taken by defendant to certain instructions given by the court. These assignments of error involve the question of whether or not the family-purpose doctrine applies in this case and, for the purpose of argument, have been considered together by appellant. They have already been disposed of by what has hereinbefore been said.

■ At the trial the defendant excepted to the refusal of the court to give the following requested instruction:

"Where one is faced with an emergency which constituted imminent danger the law does not require of him that he act with the same degree of care, caution, or good judgment that he would be required to exercise in the absence of the emergency. He is only bound to exercise that degree of care which a reasonably prudent person would exercise under the circumstances having had no opportunity to plan and to come to a correct judgment".

It was not necessary for the driver of the car to have been guilty of wilful or wanton negligence. The court, however, did give the following instruction relating to this matter:

"The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.

"The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety. * * *

"If at the time that Ernest Hurner attempted to pass the other cars the situation was such that a rea-

sonably prudent person would not have apprehended danger from the approaching car, then in so attempting to pass the other car going in the same direction, the son would not be guilty of negligence, but if the left side was not clearly visible, as I have said before, and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety, and if he endeavored to do so, then of course, he would be guilty of negligence, but that is a question of fact for you to determine under the evidence you have heard.

"If you find from the evidence that the defendant's son, Ernest Hurner, found himself confronted by an emergency which constituted an imminent and impending danger due to the unexpected approach of a car approaching in an opposite direction the fact that in attempting to escape from such imminent danger he turned to the left or made a mistake in judgment, would not make him guilty of negligence, unless his actions at such time and place were not those of an ordinarily prudent person so faced with a like emergency. A mistake in judgment is not negligence. However, if by his own negligence, Ernest Hurner brought about the perilous situation, he cannot avail himself of the benefit of this doctrine".

The foregoing instruction fully covered the situation and no error was committed in failing to give the instruction on the same subject requested by the defendant.

■ The accident in which plaintiff's decedent was killed occurred late at night on March 12, 1929. The next day the defendant and three other men called at the home of plaintiff and her husband, W. A. McDowell, expressed their sympathy over the loss which the McDowells had suffered and wanted to assist them in bearing the funeral expenses. After they had been there a few minutes, a release was signed by W. A. McDowell and Alva S. McDowell purporting to "re-

lease and discharge Alex Hurner and/or Ernest Hurner and/or Individual Underwriting Corporation, all and each of them, from all claims, controversies, demands, actions or causes of action on account of injuries,'' etc., due to the death of Vivian McDowell. The consideration paid for the release was cited as five hundred dollars. A similar release was signed by W. A. McDowell as administrator of the estate of Vivian McDowell, deceased, wherein the same consideration was expressed. At that time W. A. McDowell was not the administrator of the estate, but on the same day and at the instance of the same men Mr. McDowell signed a petition presented to him by them requesting his appointment as such administrator. The order appointing him is claimed to have been signed late that night by the county judge, but the petition for, and the order of, his appointment were not filed until March 14, 1929. Later, but after the release was signed, he resigned as administrator and Alva S. McDowell was appointed administratrix.

At the conference above mentioned, the defendant and the men accompanying him expressed a willingness to assist Mr. and Mrs. McDowell in bearing the expenses incident to the funeral of the decedent. Very little or no discussion was had as to any claim by the estate of the decedent for damages suffered by reason of decedent's death. While the document signed purported to be a release of all claims of whatsoever nature against the defendant, his son and the Individual Underwriting Corporation, nevertheless Mr. and Mrs. McDowell claimed that it was represented to them as relating only to the funeral expenses and that Mr. McDowell, as administrator, signed the release with that understanding. In discussing a somewhat

similar situation, this court, in the case of *Peluck v. Pacific Machine & Blacksmith Co.*, 134 Or. 171 (293 P. 417), said:

"Ordinarily, courts look with favor upon settlement of controversies which may lead to litigation, but a release executed under the circumstances as disclosed by the record in this case should be subjected to close scrutiny. The parties were not dealing at arm's length. Plaintiff did not have the benefit of independent advice and he was not in a physical or mental condition to determine matters vitally affecting his welfare. A hospital is a poor place to transact business. There was no need of haste. It is doubtful if plaintiff knew what it was all about. Accepting his testimony as true, there was no explanation given to him of the writing which he signed, and even had he read the same he was not capable of understanding it. In the light of this evidence, this court cannot say, as a matter of law, that plaintiff knowingly gave his assent to release the defendant from all liability for the injuries sustained".

In view of the foregoing, and under the authority of *Olston v. Oregon W. P. & Ry. Co.*, 52 Or. 343 (96 P. 1095, 97 P. 538, 20 L. R. A. (N. S.) 915), and *Wood v. Young*, 127 Or. 235 (271 P. 734), the question of whether or not the release signed by W. A. McDowell as administrator of the estate of Vivian McDowell, deceased, was obtained by fraud or misrepresentation was for the jury to determine and was properly submitted for its decision.

We have considered appellant's other assignments of error, but find that the trial court committed no prejudicial error. It follows that our previous decision was in error and that the judgment appealed from should be affirmed.

ROSSMAN, J. (specially concurring). The family car doctrine which insists that a member of the family while driving the family car upon a frolic of his own is the agent of the parent-owner of the car seems to me to do violence to well-established principles of agency. The real relationship between the parent and the child under such circumstances is that of bailor and bailee. If it is desirable to hold the parent-owner of the family car liable for its negligent operation by some other member of the household, and if established principles render this impossible, then it would seem better to create a new tort liability than to distort established principles. However, there is available the dangerous instrumentality doctrine. It was applied in *Southern Cotton Oil Co. v. Anderson,* 80 Fla. 441 (86 So. 629, 16 A. L. R. 255). It regards the automobile in its real character; that is, as a dangerous instrumentality. In applying this principle of law, the courts reason that when an owner intrusts another who is incompetent with a highly dangerous agency he puts in the latter's power to mismanage it, and that so long as it is in the custody of the other the owner should be responsible for any injury resulting from the custodian's negligence. It may be true that an automobile standing idle in a garage is quite harmless; see, however, the review of *Brody's Ltd. v. Canadian National Railway Co.,* 1 Western Weekly Reports, 715, in 73 Sol. J. 506. But a family car is never purchased for the purpose of storage. In determining whether such a vehicle is dangerous, we should take note not only of the character of the thing itself but also of the purposes for which it was purchased and the conditions under which it will be operated. Statistics proclaim loudly that the automobile in operation is a dangerous instrumentality. The ever-increasing number of laws regulating

the operation of automobiles, requiring the driver to obtain a license, report accidents, obtain casualty insurance, etc., enacted for the purpose of preventing accidents, indicates that the legislative assemblies also regard the automobile as a dangerous instrumentality. These circumstances show that the holding of the Florida court is based upon a sound premise. While the family car doctrine has been criticized as a distortion of the rules of agency, the application by the Florida court of the dangerous instrumentality doctrine to automobiles has been commended; for instance in 2 Va. Law Rev. 189, we find: "The symmetry of the law would have been better preserved and such dodging and explaining avoided, if the courts had at the outset held the automobile a dangerous instrumentality and based liability on that doctrine, or * * *." In 8 N. C. Law Rev. 256 the writer states: "That the courts should use well-established legal principles as a basis for augmenting the car owner's liability seems most natural and logical. However much violence may have been done by them to the doctrine of respondeat superior in formulating the family purpose doctrine, their course of action is to be commended rather than criticized in view of the desirability of the result reached. Perhaps it may be said that the same desired end could have been attained and with less embarrassment if the courts, instead of using the agency camouflage to give stability to the family purpose doctrine, had adopted the policy of the Florida court and had held that a motor vehicle is an inherently dangerous instrumentality in its use and operation". In *Foster v. Farra et al.*, 117 Or. 286 (243 P. 778), this court made express mention of the dangerous nature of an automobile. The basis of the dangerous instrumentality doctrine is the negligent act of intrusting custody of

the dangerous implement to one who is incompetent to properly manage it, and not a belief that the custodian is the agent of the owner.

I agree with the others that our previous decision erred, but have been brought to this conclusion by the application of the aforementioned principle of law.

BELT, J. (dissenting). On original hearing, Bean, Brown, Campbell and Belt, JJ., sitting, this court agreed without dissent that the "family car doctrine" should not be extended to the facts in this case. The writer, therefore, is fully in accord with the statement in the majority opinion that, "It is desirable that there be uniformity and stability in our decisions; that we do not declare the law to be one thing today and something else tomorrow; and that we do not deny today relief which we yesterday granted". Yea, verily, that is a wise and wholesome doctrine. It is an equally wise policy for every court to adhere to that which is sound and to reject that which is false. Otherwise, there is no progress in the law.

In my opinion, the so-called family-purpose doctrine, particularly as applied to the facts involved herein, is unsound and illogical. The majority opinion holds the father liable for the tort of his son on the theory of agency. According to the general rule of the common law a parent is not liable for the tort of a minor child. Certainly the mere relationship existing between father and son can not afford a basis for liability. This court recognized this universal rule when it refused to attach liability to a father who had placed a 32 special rifle in the hands of his minor son, resulting in injury to a third person: *Herndobler v. Rippen*, 75 Or. 22 (146 P. 140). This case was not tried

on the theory that the automobile is inherently a dangerous instrumentality. We are concerned, therefore, with the precise question as to whether or not, at the time the son was driving the automobile, he was acting within the scope of his agency.

At the time of the accident, Ernest Hurner, a minor son of the defendant, was driving home to Carlton, after having attended a basket ball game at McMinnville. Accompanying him were three companions who were riding in this one-seated Ford roadster. The automobile was kept and used for the business, convenience, and pleasure of the Hurner family. The father, who was owner of the car, had given permission to his son to use it for the purpose of attending the basket ball game at McMinnville, but had no knowledge as to who would accompany him. In response to the question, "Had you ever given any authority to take four people in that car?" the defendant answered, "I had not. I warned him against it". He knew, however, of the custom of his boy in having his schoolmates and friends to ride with him.

In the light of these facts, the writer is unable to conclude that a boy on a "joy ride" transporting his companions in violation of the law and against the warning of his father is acting for and on behalf of the latter. To so hold is, in my opinion, a plain distortion of the facts and of the law of agency.

This boy, no doubt, thought he was going on an independent journey of his own, but, no, he was mistaken, for, as suggested in *Watkins v. Clark,* 103 Kan. 629 (176 P. 131), it was "father's little outing by proxy". Some courts have stretched the law of agency to the breaking point in order to fasten liability on a paying defendant, but in all the volumes which have been written on this vexed question the writer has

failed to find a case where there has been such a departure from fundamental principles. As a matter of fact, the real basis for liability is not agency. It is public policy and that, I submit, is a matter for the legislature and not for the courts to determine.

In the following jurisdictions, the family purpose doctrine has been rejected:

Alabama: *Parker v. Wilson,* 179 Ala. 361 (60 So. 150, 43 L. R. A. (N. S.) 87);

Arkansas: *Norton v. Hall,* 149 Ark. 428 (232 S. W. 934, 19 A. L. R. 384);

California: *Spence v. Fisher,* 184 Cal. 209 (193 P. 255, 14 A. L. R. 1083);

Delaware: *Smith v. Callahan* (Del.), 144 Atl. 46 (64 A. L. R. 830);

Illinois: *Anderson v. Byrnes,* 344 Ill. 240 (176 N. E. 374); *White v. Seitz,* 342 Ill. 266 (174 N. E. 371); *Miller v. McHale,* 263 Ill. App. 471;

Indiana: *Smith v. Weaver,* 73 Ind. App. 350 (124 N. E. 503);

Kansas: *Watkins v. Clark,* 103 Kan. 629 (176 P. 131); *Thompson v. Rys. Co.,* 113 Kan. 74 (213 P. 633);

Louisiana: *Davis v. Shaw* (La. App. 1932), 142 So. 301;

Maine: *Pratt v. Cloutier,* 119 Me. 203 (110 Atl. 353, 10 A. L. R. 1434);

Maryland: *Myers v. Shipley,* 140 Md. 380 (116 Atl. 645, 20 A. L. R. 1460);

Massachusetts: *McGowan v. Longwood,* 242 Mass. 337 (136 N. E. 72, 23 A. L. R. 617);

Michigan: *Loehr v. Abell,* 174 Mich. 590 (140 N. W. 926);

Mississippi: *Smith v. Dauber,* 155 Miss. 694 (125 So. 102);

Missouri: *Hays v. Hogan,* 273 Mo. 1 (200 S. W. 286, L. R. A. 1918C, 715, Ann. Cas. 1918E, 1127);

Montana: *Clawson v. Schroeder,* 63 Mont. 488 (208 P. 924);

New Hampshire: *LaFond v. Richardson,* 84 N. H. 288 (149 Atl. 600);

New Jersey: *Doran v. Thomsen,* 76 N. J. Law 754 (19 L. R. A. (N. S.) 335, 131 Am. St. Rep. 677, 71 Atl. 296);

New York: *Van Blaricom v. Dodgson,* 220 N. Y. 111 (115 N. E. 433, L. R. A. 1917F, 363);

Ohio: *Elms v. Flick,* 100 Ohio St. 186 (126 N. E. 66);

Oklahoma: *Stumpf v. Montgomery,* 101 Okla. 257 (226 P. 65, 32 A. L. R. 1490);

Pennsylvania: *Piquet v. Wazelle,* 288 Pa. 463 (136 Atl. 787);

Rhode Island: *Landry v. Richmond,* 45 R. I. 504, (124 Atl. 263, 32 A. L. R. 1500);

South Dakota: *Behseleck v. Andrus* (S. D. 1932), 244 N. W. 268;

Virginia: *Blair v. Broadwater,* 121 Va. 301 (93 S. E. 632, L. R. A. 1918A, 1011);

Utah: *McFarlane v. Winters,* 47 Utah 598 (155 P. 437, L. R. A. 1916D, 618);

Vermont: *Jones v. Knapp,* 104 Vt. 5 (156 Atl. 399).

Wisconsin: *Crossett v. Goelzer,* 177 Wis. 455 (188 N. W. 627).

It will be observed from the above list that five states, namely, California, Illinois, Missouri, Montana and Oklahoma, which once adhered to the doctrine, now reject it. In overruling former decisions, the Supreme Court in Missouri, in *Hays v. Hogan,* supra, said:

"But the doctrine, we think, has no firm foundation in reason or common sense. In theory it overrules well-settled principles of law; in practice it would interdict the father's generosity and his reasonable care for the pleasure, or even the well-being, of his children by imposing a universal responsibility for their acts".

Also see the following legal periodicals wherein the doctrine is criticized as being a departure from well-established principles of agency: 1 New York Law

Review 283; 11 Boston Law Review 542; 26 Mich. Law Review 846; 46 Harvard Law Review 149; 15 Virginia Law Review 184; 34 West Virginia Law Quarterly 53; 1 Cincinnati Law Review 193; 11 St. Louis Law Review 131.

Those courts which have adhered to the doctrine are constantly confronted with a situation which compels them to resort to various kinds of fantastic reasoning in order to avoid an absurd result. Witness the case of *Felcyn v. Gamble,* 185 Minn. 357 (241 N. W. 37, 79 A. L. R. 1159), wherein the court refused to hold the family purpose doctrine applicable where a father had furnished a motor boat for the pleasure of his family and an injury had occurred to a guest riding in the boat while being used by the owner's son for his own pleasure. The court valiantly endeavored to make a distinction on the ground that there were at least a million automobiles traversing the highways of that state whereas there were only a limited number of motor boats. The court said:

"It is evident that in practically all of the decisions the doctrine was applied to automobiles in the interest of justice and as a necessity. The situation as regards motorboats is in no way comparable to that of automobiles".

What would this court do in a case wherein the wife had purchased an automobile for the use of the family and the husband had driven it for some purpose of his own? Would it be held that, in so doing, the husband was acting as agent of the wife?

As stated in 29 W. Va. Law Quarterly 53:

"Indications are not wanting that the courts asserting this doctrine are not entirely satisfied with it and would justify their course on the broad ground of public policy. If the automobile is not a dangerous instru-

mentality—if the parental relationship alone is not sufficient to throw the loss on the owner, and if the family purpose doctrine results in an unwarranted warping of the doctrine of respondeat superior, then no other ground than policy would seem to be available to courts that wish to impose such a liability. But if the whole question is one of conflicting considerations of policy alone, as it appears to be, then its solution is properly within the province of the legislatures, and not of the courts, and should not be arrived at by distorting the principles of agency and torts to fit the case".

Also see, to the same effect, 28 Harvard Law Review 91; 19 Mich. Law Review 543; 25 Michigan Law Review 187; 2 Temple Law Quarterly 232.

In answer to the contention that the purpose for which the car is bought is the controlling factor in determining the liability of the owner, the Supreme Court of New Jersey, in the leading case of *Doran v. Thomsen,* supra, said:

"This makes the defendant's liability to depend upon the object for which he purchased the machine, which was for the pleasure of the family, in connection with the fact that his daughter operated it for that purpose, the jury being instructed that thereby she became his servant. This is contrary to the doctrine of Evers v. Krouse (1904), [70 N. J. L. 653, 66 L. R. A. 592, 58 Atl. 181, 16 Am. Neg. Rep. 515] supra. It would subject a parent to liability if he bought for his son a baseball or for his daughter a golf club, and by permitting them to be used by his children for their appropriate purposes, injury occurred. It bases the creation of the relation of master and servant upon the purpose which the parent had in mind in acquiring ownership of the vehicle and its permissive use by the child. This proposition ignores an essential element in the creation of that status as to third persons, that such use must be in the furtherance of, and not apart from, the master's

service and control, and fails to distinguish between a mere permission to use and a use subject to the control of the master and connected with his affairs''.

In rejecting the doctrine, the Supreme Court of New York, in *Van Blaricom v. Dodgson,* supra, said:

''This is an advanced proposition in the law of principal and agent, and the question which it presents really resolves itself into the one whether, as a matter of common sense and practical experience, we ought to say that a parent who maintains some article for family use, and occasionally permits a capable son to use it for his individual convenience, ought to be regarded as having undertaken the occupation of entertaining the latter, and to have made him his agent in this business, although the act being done is solely for the benefit of the son. That really is about all there is to the question''.

I have no desire to further review the numerous decisions relative to the family-purpose doctrine and thereby contribute to the confusion and the glorious uncertainties of the law. After careful consideration, I am convinced that the weight of authority and the better reasoned cases are against the doctrine. This court, in keeping with the decided trend of modern authority, should reject it.

A discussion of the family-purpose doctrine in *Foster v. Farra,* 117 Or. 286 (243 P. 778), was unnecessary to a decision in that case. The liability of the defendant could well have been predicated upon his negligence in placing in the hands of his son an automobile known to be in a dangerous and defective condition. As stated by the court:

''In permitting his son, Herman Farra, to use the automobile in the condition it was in at the time of the accident, the defendant Walter H. Farra, violated both the letter and the spirit of the statute and was

guilty of negligence. An automobile, which is knowingly unmanageable, is such a dangerous instrumentality that it is negligence to allow its use on the highway''. Citing numerous authorities in support thereof.

Furthermore, in the Foster case, the party injured was a pedestrian on the sidewalk in a place where she undoubtedly had a right to be at the time she was struck by the automobile. Whereas, in the instant case, the young girl who met her untimely death was at a place where she had no right to be under the plain, mandatory provisions of the statute relative to the number of persons who are permitted to ride in the front seat of an automobile. Clearly, the son had no real or apparent authority thus to violate the law.

Even though the court should decide to adhere to the family-purpose doctrine as announced in the Foster case, in my opinion there is no justification for applying the doctrine to the facts in this case. I, therefore, dissent from the affirmance of the judgment and am of the opinion that this court should adhere to the conclusion reached on original hearing.

KELLY, J., concurs in this dissenting opinion.