Argued November 19, affirmed December 23, 1959

# MOUDY *v.* BOYLAN ET AL
## 347 P. 2d 983

*Robert L. McKee* and *Nels Peterson,* Portland, argued the cause and filed briefs for appellant.

*John C. Beatty, Jr.,* Portland, argued the cause for respondents. With him on the brief was Herbert M. Schwab, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN and KING, Justices.

KING, J., (Pro Tempore)

This is an action for damages for personal injuries arising out of an automobile collision between a car which the plaintiff, Ella M. Moudy, was driving and one being driven by the defendant Marvin K. Boylan.

The jury returned a verdict for the defendant, and after a motion for new trial was denied, the plaintiff brought this appeal.

The principal question involved is whether the trial court should have instructed the jury that the defendant was negligent as a matter of law, that his negligence proximately caused the collision, and that the plaintiff was not guilty of contributory negligence. And, therefore, the jury should have been allowed only to determine the extent of plaintiff's injuries and the amount of damages.

On July 2, 1955, at about 10 o'clock p.m. the plaintiff, Ella M. Moudy, was driving a 1949 Plymouth sedan south on N. E. Union Avenue in Portland, Oregon. Her husband was riding in the front seat beside her and was holding their baby in his lap. Their other two small children were in the back seat of the car.

The defendant Marvin K. Boylan was driving north on N.E. Union Avenue, in a 1946 Pontiac sedan owned by his father and mother, Mr. and Mrs. C. E. Boylan. He had as a passenger beside him a young boy named Arthur Horset.

N. E. Union Avenue was a four-lane street. Two

lanes were for southerly traffic and two lanes were for northerly traffic. The plaintiff was driving in the outside or westerly lane southerly toward Hassalo Street, a two-lane street running east and west which intersects Union Avenue at right angles. The defendant was driving in the inside lane of Union Avenue going north as he approached the intersection with Hassalo Street. As he reached Hassalo Street he turned left to go west thereon, and the collision took place with plaintiff's car in the intersection. The exact point of the collision was not pointed out. The damage was very light to both cars and both could leave on their own power.

Plaintiff's first assignment of error is as follows:

"The Court erred in failing to give the following instruction requested by the plaintiff:

" 'You are instructed that under the defendant's testimony he was guilty of negligence as a matter of law in the operation of his motor vehicle at the time and place alleged in plaintiff's second amended complaint. You are further instructed that said negligence was the proximate cause of the collision with plaintiff's motor vehicle.

" 'You are further instructed that under all the evidence of this case, the plaintiff in the operation of her motor vehicle, was not guilty of negligence which contributed to her injuries, if any. Therefore, the only question which you will determine in this case is the nature and extent of plaintiff's injuries proximately resulting from the collision complained of, and the amount of plaintiff's damages, general and special.' "

In order to get defendant Marvin K. Boylan's version of the accident, we will set forth parts of his

testimony. On direct examination he testified as follows:

"Q All right. Now would you tell us—about how fast were you driving as you were driving along Union before you slowed down for your turn?

"A About thirty, sir, before the turn.

"Q And will you tell us in your own language just what happened.

"A Yes, sir. I had stopped at a stop light before Hassalo.

"Q About how far before Hassalo?

"A One block, sir. And when the light changed then I had proceeded through and as I came into Hassalo to make my left turn I had—there was a group of cars coming southbound on the other two lanes, and as those cars disappeared and got by I thought that there was no other cars coming southbound on those two lanes. I shifted my car into second to make my turn and at that moment I looked in the rear view mirror to see if there was any other car approaching from the rear, and I started my swing into it and the boy that was riding with me told me 'Look out,' there was a car, and I looked up and applied my brakes at the moment of the impact.

"Q All right. That is the first time you saw or noticed the Moudy car was when this boy yelled to look out.

"A That's right, sir."

On cross-examination the defendant testified that he was driving in his left lane and passed several cars that were going south in the block immediately before he got to Hassalo Street; that the last one he passed was 100 or 150 feet before he arrived at Hassalo Street.

He was then asked the following questions and gave the following answers:

"Q And you approached there. Did you give a signal?

"A No, sir.

"Q You gave no signal for a left turn?
"A That's right.

"Q And your window was open?
"A That's right.

"Q Was there a car back of you?
"A He had just—well, I don't know when he came in behind.

"Q Well, I am asking you at the time you approached here (indicating) and after you passed the last car going south was there a car back of you going in the same direction?
"A Yes.

"Q And when did you first see that car?
"A When I was in the process of changing from high to low to second to make my turn, I looked in the rear view—

"Q (Interposing) That is the first time you looked in there?
"A That's right.

"Q And where was that other car?
"A He was probably four or five car lengths behind.

"Q In the same lane of travel as you?
"A That's right.

"Q And so you were looking in the rear view mirror; is that correct?
"A Momentarily, yes.

"Q But you gave no signal?
"A That's right.

"Q Now, then you made a turn; is that correct?
"A Correct.

"  *    *    *    *    *

"Q Now, Mr. Boylan, did you see the other car with which your car collided before the impact?

"A No.

"Q You didn't see it at all?

"A No. I would have swore that there was no other car coming southbound at any time.

"* * * * *

"Q What would you estimate your speed at the moment of impact?

"A About fifteen, maybe twenty.

"* * * * *

"A The reason I made my left-hand turn was that I had thought and still think that I did not see her and I did not see an approaching car before I made my left-hand turn, and I took for granted that it was all clear and that I had the right and the privilege to make a left-hand turn as normal proceeding of turning from one direction to another direction."

The above covers substantially all the pertinent testimony of the defendant on direct and cross-examination relative to the accident itself, with the exception of some questions and answers given at the blackboard and in demonstrating positions of the cars to the jury, which are not made plain by the transcript.

The plaintiff, Mrs. Moudy, testified on direct examination regarding the accident and events immediately subsequent as follows:

"Q Mrs. Moudy, would you tell the jury in your own language what occurred as you were driving that car south on Union Avenue on that day?

"A Yes. It was just a real nice day, and we just were going along sort of slow and easy, and I was in the outside lane of the southbound traffic, and there just wasn't any traffic immediately on either side or following me, and the next thing I noticed, just as I entered Hassalo, this car just swerved right in front of me, and that's all there was to it. He hit me.

"Q What kind of a car was it?

"A It was a light blue, I think, and gray Pontiac.

"Q Now, Mrs. Moudy, about at that point, as you were traveling, what was your approximate speed?

"A Oh, 20 to 25 miles an hour.

"Q Did the operator of that car give any signal?

"A No.

"Q Was there any sound by horn or otherwise?

"A No.

"Q Was there any signal by a mechanical device?

"A No.

"Q Or signal by arm?

"A No, there was no signal.

"Q Mrs. Moudy, how long in point of time did you see the other car before the impact?

"A I didn't see—I didn't pay any particular attention to him until he turned, and it was such a shock, I immediately put on my brakes.

"Q In point of time, how much time would you estimate elapsed between the time he turned and the collision?

"A A matter of seconds."

On cross-examination the plaintiff was asked and answered the following questions relative to statements she made in her deposition:

"MR. SCHWAB: Page 4. 'Where was he when you first saw him, his car?' You said, 'He was coming up the street.' 'Well, about how far away from you?' 'Well, he was just about to make the turn, which would probably be maybe 100 feet away.'

"Do you recall that?

"THE WITNESS: Yes, sir.

"Q Then I said, 'About how far away?' You said, 'I suppose 100 feet. I don't know much about

it.' Then I said, 'Was he at the intersection when you first saw him?' And your answer was, 'Yes.'
"A   Yes.

"*   *   *   *   *

"Q   But at any rate, when you first saw him, he was in the act of turning; is that correct?
"A   Yes."

The above testimony of plaintiff and defendant constitutes practically all the testimony in the case regarding the accident and its cause. Mr. Moudy, who was riding beside the plaintiff, did not see the defendant's car until the collision. The Horset boy, riding with the defendant, did not testify. Mr. Erceg, who was in business at Union and Hassalo Streets, heard the noise but did not see the collision. The policeman who was called to the scene a few minutes after the collision did not testify. Thus we must decide the question posed almost entirely from plaintiff's and defendant's testimony.

The requested instruction is very general in its terms. First it asks that the court instruct the jury that the defendant was negligent. It does not point out in what particular, although six different allegations of negligence are set forth in the complaint.

In her brief and in this court, the plaintiff primarily stressed the alleged violation of law, for failure to give signal and properly make a left turn.

ORS 483.126 provides:

"(1) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety. If any pedestrian may be affected by such movement the driver shall give a clearly audible signal by sounding the horn. Whenever the operation of any other vehicle may be affected by such movement he shall give a proper signal

which is plainly visible to the driver of such vehicle of the intention to make such movement.

"*  *  *  *  *

"(3) Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to:

"(a) Turn to the left by extending his hand and arm horizontally from and beyond the left side of the vehicle."

ORS 483.202(3) provides:

"The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard. Having so yielded and having given a signal when and as required by law, the driver may make such left turn, and other vehicles approaching the intersection from the opposite direction shall yield to him."

This court in *Schutt v. Hull,* 193 Or 18, 236 P2d 937, said:

"*  *  *  The law does not require a motorist in every instance to give a signal of his intention to make a left-hand turn but only 'whenever the operation of any other vehicle may be affected by such movement.' Since when the left-hand turn was being effected and plaintiff's car, so far as defendant's version of the distance is concerned, was a considerable distance away and defendant thought that, on account of such distance separating the two cars, he was warranted in believing that he could pass safely to the opposite side of the highway, it would be a question of fact for the court to determine whether or not, under the circumstances, the operation of plaintiff's car would be affected by such movement of defendant's car, and, therefore, whether in fact defendant was guilty of negligence."

The above case was tried by the court without a jury.

■ In the present case it would be a question of fact for the jury, under proper instructions, to determine whether or not the defendant violated the law. If they so found, then such violation would be negligence per se, or negligence in and of itself as a matter of law. Even if he did violate the law, there was still a further question of fact as to whether such violation, if any, was the proximate cause of the accident and plaintiff's injuries.

In this case contributory negligence was pleaded as a defense, and four allegations of negligence were made against the plaintiff by the defendant.

■ This court has many times held that contributory negligence is a question of fact to be determined by the jury. It is very seldom that a jury is instructed that there is no contributory negligence. *Nicholas v. Fennell,* 184 Or 541, 199 P2d 905; *Sheard v. Oregon Electric Ry. Co.,* 131 Or 415, 282 P 542.

In this case by plaintiff's own statements in her deposition, as she admitted on trial, she saw the defendant making a left-hand turn some 100 feet away. Certainly this court could not say there was no evidence of lack of care or contributory negligence on the part of the plaintiff.

The circuit court rightly refused to give the instruction requested by the plaintiff and properly submitted the case to the jury under appropriate instructions, which were not excepted to by the plaintiff.

Plaintiff's assignment of error No. 1 is without merit.

Assignment of error No. 2 is that:

"The Court erred in giving the following instructions:

" 'We do not recognize in this state the doctrine

of comparative negligence. So that if plaintiff was negligent in one or more particulars as alleged in defendant's answer and such negligence contributed to the proximate cause of the accident, she could not recover.' "

This instruction was given by the court along with the other usual and applicable instructions on negligence and contributory negligence. It must be considered along with the other instructions of which it is a part.

The plaintiff cites a number of authorities which hold that contributory negligence is an affirmative defense. *Doty v. Southern Pacific Co.,* 186 Or 308, 323, 207 P2d 131; *Flatman v. Lulay Bros.,* 175 Or 495, 499, 154 P2d 535; and *Ordeman v. Watkins,* 114 Or 581, 236 P 483.

■ We agree that contributory negligence is an affirmative defense, and the trial court so instructed the jury. The trial court further instructed the jury, among other things, as follows:

"When it comes to contributory negligence, there is a like burden of proof upon the part of the defendant to prove one or more of the charges of contributory negligence made by the defendant against the plaintiff, and that such act of contributory negligence, if established, was a contributing proximate cause of the accident."

■ A casual glance at the testimony of Mrs. Moudy quoted above will show that her own statements would be sufficient to require submitting the question of her contributory negligence to the jury; for instance, testimony of her statement in the deposition as to the distance she was away when she first saw the defendant making his turn. Her speed, while apparently moderate, would be a jury question under the

conditions. Likewise the question of proper lookout and other matters was for the jury on the issue of contributory negligence. Negligence or contributory negligence is not presumed; in fact, the law presumes the exercise of due care by both parties; but this is a disputable presumption and may be overcome by satisfactory evidence to the contrary, and the trial court, fully and properly, so instructed the jury.

Contributory negligence, when pleaded, is usually, and in this case was, a question for jury determination and was properly submitted to the jury. *Loibl v. Niemi*, 214 Or 172, 327 P2d 786; *Jensen v. Salem Sand and Gravel Co.*, 192 Or 51, 233 P2d 237; *White v. Keller et ux.*, 188 Or 378, 215 P2d 986; *Doty v. Southern Pacific Co.*, supra; *Cooper v. North Coast Power Co.*, 117 Or 652, 244 P 665; 38 Am Jur, Contributory Negligence 1052, § 348.

■ Plaintiff's assignment of error No. 2 is not sustained and the challenged instruction was properly given.

Assignment of error No. 3 states:

"That the Court committed error in the law in granting a non suit in favor of Mrs. C. E. Boylan."

The complaint had alleged that the defendant Marvin K. Boylan was "driving a family automobile owned by his parents, C. E. Boylan and Mrs. C. E. Boylan, and driving as an agent and employee of his parents for a family purpose."

C. E. Boylan was deceased at the time of trial and no substitution was made. Dismissal of the action against him was ordered by the court on agreement of both parties.

■ The lower court allowed a motion for directed

verdict against the defendant Mrs. C. E. Boylan with this statement:

> "Unless you have something more to tell me, I don't think you have got any evidence that would tie in Mrs. Boylan, either on the theory of an agency and employment of Marvin in their behalf or on the theory of family use. I will allow the motion as far as Mrs. C. E. Boylan is concerned."

The plaintiff made no objection to this statement or order; however, we will consider the assignment of error as though alleged error had been pointed out to the lower court.

In *Gossett v. Van Egmond,* 176 Or 134, 142, 155 P2d 304, this court said:

> "The 'family purpose' doctrine is based upon the theory that, when an automobile is maintained by the owner for the pleasure or convenience of his family, a member of the family, who is using it for his own pleasure or convenience, is the agent of the owner, and the latter is responsible for his negligence. Foster v. Farra, 117 Or. 286, 243 P. 778; McDowell v. Hurner, 142 Or. 611, 13 P. (2d) 600, 20 P. (2d) 395, 88 A.L.R. 578; Cooley on Torts, 4 ed., section 525."

In the present case there was no proof that the automobile being driven by Marvin Boylan was maintained by his parents for his pleasure and convenience. In fact, they were two separate families and two separate households. Marvin K. Boylan had his own family and his own home. It is true that his parents, Mr. and Mrs. C. E. Boylan, stayed at his home at times because of Mr. Boylan's illness, but generally the parents maintained their home in McMinnville, Oregon, while Marvin K. Boylan and his family lived in Portland, Oregon. At the time of the accident Mr. and Mrs. C. E. Boylan were with another son in Eastern Oregon, and had been there more than a month.

In *Cockerham v. Potts,* 143 Or 80, 20 P2d 423, this court held that a parent purchasing an automobile for the use of the family was liable for negligence of a daughter, over 21 years of age, and that her driving came under the "family purpose" doctrine. But in that case the daughter was regularly living with her parents and used the car regularly to drive to and from school where she was teaching, and the car was bought largely for that purpose. No such facts appear in the present case. There was no showing that the car was purchased or maintained for "family purpose," and we hold that the "family purpose" doctrine does not apply. There was not sufficient proof of "family purpose" doctrine nor of agency to justify submitting the case to the jury against Mrs. C. E. Boylan, and the circuit court properly directed a verdict in her favor.

■ In any event, whether or not Mrs. C. E. Boylan was a party defendant would have had no effect on the verdict of the jury. Her liability, if any, would have been based on the negligence of Marvin K. Boylan, and the jury's verdict was in his favor on instructions which we have approved.

Assignment of error No. 4 says:

"That there was error in the law in allowing the defendant to introduce to evidence a complaint which was not properly identified. That this evidence was introduced over the objection of counsel for the plaintiff."

■ This assignment refers to defendant's exhibit No. 32, an amended complaint in another personal injury action by the plaintiff. It was verified under oath by the plaintiff. It was used on cross-examination of an expert, and for the purpose of determining whether, if the doctor had known of the prior claims

of injuries therein set forth, it would have changed the opinion he expressed. The trial court in ruling on the motion for new trial held it was competent for that purpose and as an admission against interest. We agree.

Likewise, it merely went to the question of injuries and not to the liability and could not affect the outcome of this case, in which the jury found for the defendant on the question of liability.

Assignments of error Nos. 5, 6, 7 and 8 all refer to the claim that the court should have withdrawn the various allegations of contributory negligence from the jury.

These matters have all been considered and discussed under assignments of error Nos. 1 and 2, and it would unduly lengthen this opinion to discuss them again. Suffice it to say again that the questions of negligence, proximate cause, contributory negligence and other matters were fairly and properly submitted to the jury by the able trial judge, and the jury verdict for the defendant is sustained.

Affirmed.