(No. 6103. May 29, 1934.)

IRA S. GORDON and ELEANORE GORDON, Husband and Wife, Appellants, v. A. L. ROSE, Respondent.

[33 Pac. (2d) 351.]

J. H. Peterson and Clyde Bowen, for Appellants.

504

[redacted]

Merrill & Merrill, for Respondent.

[redacted]

WERNETTE, J.—This is an action for damages for the death of a minor son. The case is before us upon the amended complaint of appellants and the demurrer thereto.

The amended complaint alleges the marital status of the plaintiffs, and that they were the father and mother of Sanford Gordon, a minor; that on the first day of June, 1931, Minnie Rose, the daughter of defendant, a girl about eighteen years old, while driving a family car of defendant, negligently and carelessly ran over and killed Sanford Gordon, while operating said car, the property of the defendant. In paragraph three of said amended complaint the following is alleged:

"Plaintiffs allege that at the time of said accident, and at the time of the driving of said car by said Minnie Rose, she was a member of the family and of the house-

hold of said defendant and was living at home with said defendant, and that said car involved in said accident was, as aforesaid, the family car and was owned, provided and maintained for the general use, pleasure and convenience of said family and was being used by said member of his family at the time of said accident; that at said time said daughter, so operating said car, was wholly supported and maintained by said defendant and was herself without property, and was operating and driving said car by the consent, knowledge, acquiescence, approval and direction of said defendant, and was engaged upon the business for which said car was purchased, to-wit: for the general use of the family of said A. L. Rose; that by reason of the aforesaid facts, the said daughter at the time of the accident, and while driving said car, became and was the agent of said defendant, A. L. Rose.''

The amended complaint then sets forth the damages sustained, and expenses incurred by reason of the injury and death and prays for general and special damages.

The defendant filed a general and special demurrer to the amended complaint, contending first that the amended complaint did not state facts sufficient to constitute a cause of action and, second, that the same was uncertain and ambiguous, in that paragraph two of the amended complaint alleged that Minnie Rose, ''negligently and carelessly ran over and killed Sanford Gordon, the minor son of the parties hereto, while operating said car,'' but that it was not alleged what plaintiffs would contend constituted the negligence, and neither was it alleged that said general allegations of negligence constitute the same allegations as subsequently alleged in said amended complaint.

The court sustained the demurrer to the amended complaint, giving plaintiffs ten days in which to amend. Upon failure of plaintiffs to further plead the action was dismissed. This appeal is prosecuted from the judgment of dismissal.

Considering the general demurrer to the amended complaint, it is the serious contention of appellants that the

complaint states sufficient facts to constitute a cause of action under the rule of agency as announced in *Willi v. Schaefer Hitchcock Co.*, 53 Ida. 367, 25 Pac. (2d) 167, and also that it states sufficient facts under the rule of the · family purpose doctrine. In the Willi case this court held that upon proof of ownership of a motor vehicle:

"The fact of ownership alone, regardless of the presence or absence of the owner in the car at the time of the accident, establishes a *prima facie* case against the owner, for the reason that the presumption arises that the driver is the agent of the owner."

and is acting within the scope of the agent's employment with the owner. Appellants argue, therefore, that an allegation that gives rise to an implication is sufficient to bring the implication within the direct terms of the pleading; that having alleged in the complaint that respondent was the owner of the automobile driven by his daughter at the time of the accident would, if proven, give rise to the implication or presumption that the respondent was the master and the driver of the automobile was his servant and in the scope of her employment, and therefore sufficient to prove a cause of action; and having alleged such state of facts the complaint is sufficient to state a cause of action, challenged only by general demurrer. Appellants claim that they should not be required to allege any more than they would be required to prove; that "whatever is necessarily implied by a statement directly made or is reasonably to be inferred therefrom is to be treated as averred directly," citing: *Connelly Co. v. Schlueter Bros.*, 69 Mont. 65, 220 Pac. 103; *Cook v. Galen*, 83 Mont. 334, 272 Pac. 50. In this contention made by appellants they entirely lose sight of the law as announced in *Willi v. Schaefer Hitchcock Co., supra,* regarding the presumption that arises from the ownership of the automobile, above quoted, in that this presumption is rebuttable and that, "where the evidence offered to establish facts which would rebut this presumption is contradictory, the question is one for the jury; but, where the facts so offered are undisputed and

uncontradicted, it becomes properly a question for the court.'' The same rule testing the sufficiency of the proof would control in testing the sufficiency of the complaint. If enough is pleaded to destroy the presumption then the question of agency, ''becomes properly a question for the court.'' While it is alleged in the amended complaint that the automobile was owned by respondent and was driven by his daughter at the time of the accident, yet these allegations are explained and circumscribed by positive allegations in paragraph three, to the effect that at the time of the accident and the driving of said car by the daughter, she was a member of the family and household of respondent and was living at home with him; that the car driven at the time was the family car, owned and provided and maintained for the general use, pleasure and convenience of the family and was being so used at the time of the accident; that at said time such daughter was wholly maintained and supported by respondent, had no property of her own, was operating and driving the car by the consent, knowledge, acquiescence, approval and direction of respondent, and was engaged upon the business for which the car was purchased, to wit: ''for the general use of the family of said A. L. Rose; that by reason of the aforesaid facts, the said daughter at the time of the accident, and while driving said car, became and was the agent of said defendant, A. L. Rose.''

By the positive allegations of paragraph three, the appellants unquestionably intended, and did attempt to invoke the family purpose doctrine, but in so doing the strong positive language destroyed the presumption of agency announced in *Willi v. Schaefer Hitchcock Co., supra,* which appellants are contending for. It is hard to conceive how any allegations in a complaint could have been made to present more clearly or forcibly the family purpose doctrine to the court. The allegations clearly show that the daughter was driving the car for purposes entirely personal to her, and clearly negatives the fact that the daughter was driving her father's car as an employee.

Appellants contend that, ''It is familiar law that a complaint, when attacked by demurrer upon the ground that it fails to state facts sufficient to constitute a cause of action, will be liberally construed and upheld where it contains allegations of fact sufficient reasonably and fairly to apprise defendant of the nature of the claim against him,'' citing numerous authorities in support of such rule. Considering the amended complaint as a whole, and applying the rule thus announced, it is readily seen that the alleged cause of action is based solely upon the family purpose doctrine, thereby completely destroying the general allegation of agency. It is not claimed by the allegations that respondent is liable because his agent committed a wrong, which agency is alleged by invoking the presumption that the agent was using the master's car, but that such agency in reality was that involved in the family purpose doctrine. The question is therefore squarely before us as to whether or not the family purpose doctrine is to be adopted as a rule of law in this state, as the question has not been heretofore passed on by this court.

There is a decided conflict in the authorities of the various jurisdictions in cases where the owner of a car kept for family use is sought to be held liable for the negligence of one of the members of the family using it for his own purposes. (See: Anderson, An Automobile Accident Suit, sec. 521, p. 592; 2 Blashfield, Cyclopedia of Automobile Law, chap. 62, sec. 9; 7–8 Huddy, Cyclopedia of Automobile Law, 9th ed., sec. 126, p. 327; Babbitt, Motor Vehicle Law, 4th ed., p. 923; and cases annotated in 64 A. L. R. 851.)

It seems that the family purpose doctrine came into existence with the advent of the automobile. Those courts that adhere to the doctrine attempt to justify it under the rule of agency, but upon a careful analysis it readily appears that such holdings are based primarily on grounds of public policy and natural justice, and that the doctrine has been extended beyond the fundamental principles of agency. *Benton v. Regeser*, 20 Ariz. 273, 179 Pac. 966,

is one of the leading cases in support of the doctrine and the court quotes freely from many of the leading cases which uphold the doctrine, clearly setting forth the rule and the reason therefor, best illustrated by the quotation approved from *King v. Smythe*,. 140 Tenn. 217, 204 S. W. 296, L. R. A. 1918F, 293, as follows:

"If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form. The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets, or he can forbid its use altogether. He must know the nature of the instrument and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities."

In answer to the reasons set forth by those upholding the doctrine, it may be stated that it is a broad general rule that a parent is not liable for the torts of his children. (Anderson, An Automobile Accident Suit, sec. 522, p. 594, and authorities cited, and see, also, *McDowell v. Hurner*, 142 Or. 611, 13 Pac. (2d) 600, 20 Pac. (2d) 395, 88 A. L. R. 578; *Schultz v. Morrison*, 91 Misc. 248, 154 N. Y.

Supp. 257.) We believe that in the case of *McDowell v. Hurner, supra*, the court clearly and concisely sets forth the reasons why the basis on which the doctrine is generally upheld is not sound, wherein the court says:

"An automobile is not inherently dangerous. It is dangerous only by reason of the manner of its operation. It follows that the liability of the father, if any exists, must be predicated upon the theory of agency. In order to charge the parent with responsibility, it must appear that the relation of principal and agent or master and servant existed between the parent and the child. To say that the son, in taking this trip to McMinnville for the purpose of attending a basketball game—riding as he was in violation of the law—was engaged in furthering the business or social interests of the father, thereby creating the relation of master and servant, comes near distorting beyond recognition well-established principles of agency. If the basis of liability be that the father, in keeping a family automobile, is engaged in the business of furnishing pleasure and recreation to members of his family, he would, with like reason, be responsible for the negligence of his children in the use of golf clubs, baseball bats, and bicycles purchased by him for their pleasure and convenience. Those who differ with such conclusion are obliged to do so on the ground that the automobile is a more dangerous instrumentality. Yet courts universally hold that automobiles are not inherently dangerous."

The language used by the court in *Watkins v. Clark*, 103 Kan. 629, 176 Pac. 131, is quite apt, wherein the court said:

"The automobile was not a dangerous instrumentality which the defendant let loose in the community. . . . . Mismanagement by the driver was the cause of the accident. The purchase of the automobile by the defendant for the use of his family, including his daughter, operated as a gift to them of the right to use it. When using it to accomplish his purposes, whether business or pleasure, they represent him, but when they exercise their privilege and

use it to accomplish their own distinct purposes, whether business or pleasure, they act for themselves, and are alone responsible for their negligent conduct. . . . .

"The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and strange, and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse, this view had to be abandoned. The notion, however, of general liability on the part of the owner for use of his car having been planted in the mind, it lingered there like a superstition. Courts were reluctant to ignore it, and as a result, an adaptation of the law of master and servant, and principal and agent, was resorted to, to explain the liability. If a man purchased an automobile and allowed his wife and his son and his daughter to use it, the use was his by virtue of representation, whether representation existed in fact or not. The deduction was facilitated by employment of the fine art of definition—putting into the definition of the term 'business' the attributes necessary to bolster up liability. So, if daughter took her friend riding, she might think she was out purely for the pleasure of herself and her friend, but she was mistaken; she was conducting father's 'business' as his 'agent.' As this incongruity became more and more apparent, a further concession was sometimes made. If the owner allowed a member of his family to use the automobile he might not be liable, but it was 'presumed' the use was his by representation. If son took his best girl riding, *prima facie* it was father's little outing by proxy, and if an accident happened, *prima facie* father was liable."

In Minnesota the court has uniformly upheld the family purpose doctrine. (*Johnson v. Evans,* 141 Minn. 356, 170 N. W. 220, 2 A. L. R. 891; *Kayser v. Van Nest,* 125 Minn. 277, 146 N. W. 1091, 51 L. R. A., N. S., 970.) Eventually it was called upon to apply the rule in a case involving

a motor-boat which had been purchased by the head of a family for the use and pleasure of the family. (*Felcyn v. Gamble*, 185 Minn. 357, 241 N. W. 37, 79 A. L. R. 1159.) The court refused to apply the rule with reference to the motor-boat, using this language:

"It is evident that in practically all of the decisions the doctrine was applied to automobiles in the interest of justice and as a necessity. The situation as regards motor-boats is in no way comparable to that of automobiles."

The only reason the court gives to distinguish one from the other is that there are fewer motor-boats than automobiles, and that they are less dangerous. If the reasons generally given in upholding the family purpose doctrine are correct, then the refusal on the part of the court to apply the doctrine was not justifiable, as is strongly pointed out in the dissenting opinion in the case. It but illustrates the fact of the position in which a court is oftentimes placed when it deviates from well-established fundamental principles to meet the exigencies of a particular case, which, apparently, has been the true reason for the family·purpose doctrine.

 It may be true that as a matter of public policy the head of a family who purchases an automobile and permits the various members of the family, regardless of age or responsibility, to use the same unrestrained, should be required to assume the risk and held responsible for the acts of his household when driving the car, regardless of the purpose for which the car is being used. Courts, generally, now say that the automobile is not a dangerous instrumentality. That being true, if the principle of *respondeat superior* is not applicable to hold the head of a family responsible when a member of the family is using the automobile for his own purposes—and we do not think the principle is applicable—the only available ground left to justify the courts in applying the doctrine is one of policy. If this question of applying the family purpose doctrine is one of conflicting considerations of policy, and it would so appear, it is properly for the legislature to

determine that policy, and not for the courts to do so by distorting basic principles of agency and torts. For a discussion, see: 28 Harvard Law Review, 91; 19 Michigan Law Review, 543; 25 Michigan Law Review, 187.

There are quite a number of states that have adopted and strictly adhere to the family purpose doctrine, while some states that had adopted the rule either repudiated it or modified the doctrine as originally announced, and in many jurisdictions they refused to adopt the rule. Among the authorities refusing the rule, are: *Anderson v. Byrnes,* 344 Ill. 240, 176 N. E. 374; *McDowell v. Hurner,* 142 Or. 611, 13 Pac. (2d) 600, 20 Pac. (2d) 395, 88 A. L. R. 578; *Crossett v. Goelzer,* 177 Wis. 455, 188 N. W. 627; *Wilcox v. Wunderlich,* 73 Utah, 1, 272 Pac. 207; *Rowland v. Spalti,* 196 Iowa, 208, 194 N. W. 90; *Clawson v. Schroeder,* 63 Mont. 488, 208 Pac. 924; *Jamar v. Brightwell,* 162 Okl. 124, 19 Pac. (2d) 366; *Daily v. Schneider,* 118 Kan. 295, 234 Pac. 951; *Hays v. Hogan,* 273 Mo. 1, 200 S. W. 286, Ann. Cas. 1918E, 1127, L. R. A. 1918C, 715; *Heissenbuttel v. Meagher,* 162 App. Div. 752, 147 N. Y. Supp. 1087, affirmed 221 N. Y. 511, 116 N. E. 1050.

Even though we had no legislation on this subject we feel that we would not be justified in adopting the family purpose doctrine as a rule of law in this state; that the reasoning adopted by the various authorities above cited refusing to adopt the same state the better view and the reasons for refusing are sound and logical. As heretofore stated, it is a question more for the legislature than for the court. The legislature of this state has heretofore acted in this regard, which law we believe is controlling. Section 48–903, I. C. A., provides:

"Every owner of a motor vehicle causing or knowingly permitting a minor under the age of sixteen years to drive such vehicle upon a highway, and any person who gives or furnishes a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damage caused by the negligence of such minor in driving such vehicle."

In the enactment of such law the legislature had before it the question of determining the liability of owners of automobiles who permitted the minors to operate them. By the enactment of the above statute it determined, regardless of the question of agency, that if an owner of a motor vehicle entrusted the same to one under sixteen years of age he was liable for damages resulting from the minor's negligence. The statute in question does not exclude the head of a family from its operation, but includes all owners; it makes no exceptions so as to give room for the family purpose doctrine. Under the statute the question of master and servant, or principal and agent cannot be called in question, and the rules of law governing those relationships are not controlling. It would seem that said law was enacted for the various reasons and purposes which prompted some of the courts to adopt the family purpose doctrine. A reasonable construction to be placed on the statute before us is, that it was the intention of the law-making body that an owner of a motor vehicle who permits the same to be driven by one under sixteen years of age should be held in damages for the negligence of the driver, regardless of agency; that if the driver is over sixteen years of age there must exist the doctrine of *respondeat superior,* as that term is understood, before the owner can be held. While the act does not so expressly state, by implication it so provides, otherwise the age limit therein mentioned would be ineffective.

In view of what has been said, the court was correct in sustaining the general demurrer to the amended complaint, and the other questions raised need not be considered.

Judgment affirmed, with costs to respondent.

Budge, C. J., and Givens, Morgan and Holden, JJ., concur.