ARCHIE SARE, and WILLIAM SARE, and KEITH SARE, by their next friend, ARCHIE SARE,

*Plaintiffs and Appellants,*

vs.

RAYMOND STETZ, also known as RAY STETZ, and MARY PODORSKI,

*Defendants and Respondents.*

(No. 2443; February 7th, 1950; 214 Pac. (2d) 486)

For plaintiffs and appellants the cause was submitted on the brief of H. Glenn Kinsley and James Munro of Sheridan, Wyoming and oral argument by Mr. Kinsley and Mr. Munro.

For defendants and respondents the cause was submitted on the brief of G. A. Layman and R. G. Diefenderfer of Sheridan, Wyoming.

58

## OPINION.

This is a direct appeal proceeding to review the action of the District Court of Sheridan County in declining to enter a judgment against the defendant, Mary Podorski in litigation growing out of a collision between two automobiles traveling in opposite directions on a state highway not far from the City of Sheridan. The accident occurred October 26, 1947 about 11:30 A. M. The cause was entitled: ARCHIE SARE, and WILLIAM SARE and KEITH SARE, by their next friend, ARCHIE SARE, Plaintiffs vs. RAYMOND STETZ, also known as RAY STETZ, and MARY PODORSKI, Defendants. The collision, as the trial court found, resulted as the consequence of the negligence of the defendant, Raymond Stetz in driving his automobile on the wrong side (his left side) of the highway which both cars were using at the time. A judgment was entered against the defendant, Raymond

Stetz and from that judgment no appeal has been prosecuted so far as presented by the record before us.

It was alleged in plaintiffs' petition in paragraph numbered "III A" as an amendment thereto in addition to other averments designed to show the negligence of the defendant last mentioned and the injuries suffered by the plaintiffs, William and Keith Sare as follows:

"That said automobile, owned by the Defendant, Mary Podorski, also known as Mary Podorski, was owned, kept and used by said Defendant as a family car and was furnished by said Defendant to her said son, the Defendant, Raymond Stetz, also known as Ray Stetz, for use as a pleasure car, and family conveyance; that the said Raymond Stetz, also known as Ray Stetz at all times herein mentioned, and at the time of the collision herein complained of, was a member of the family of the Defendant Mary Podorski and resided with the said Mary Podorski, his mother, and was at the time of said collision, using said automobile as a family car with the permission and consent and implied direction of the said Defendant, Mary Podorski. That the said Defendant, Raymond Stetz, also known as Ray Stetz was at said time, a minor residing in the home of his said mother, Mary Podorski, and the said Defendant, Mary Podorski was under legal and moral obligation to support and provide for her said son."

Plaintiffs also among other thing alleged in Paragraph VI of said petition that:

"the Defendant Raymond Stetz was driving the said Buick automobile owned by his said mother Mary Podorski, with her full knowledge, consent and approval and for and on her behalf and as her agent and representative in the operation of said car and on said occasion said Defendant disregarding his duty in that behalf, did wilfully and wantonly, neglectfully and carelessly and improperly propel and operate said automobile by driving the same at said time and place upon the wrong side of the highway."

To plaintiffs' amended pleading the defendants interposed a general denial.

On the trial of the action which was to court without a jury, it was stipulated between the parties represented by their counsel that:

"the facts alleged in paragraph No. 3-A offered as an amendment and attached and now made a part of the plaintiffs' petition as Amended are true, and that evidence in support of said allegations is expressly waived and said allegations are admitted."

In connection with the quoted part of plaintiffs' petition and the stipulation aforesaid and to be considered therewith, the defendant, Raymond Stetz testified on cross examination, as we abstract his testimony, that at the time this accident happened he was eighteen years old, then living with his mother and father at 1435 N. Main St.; that his mother owned the car Stetz was driving; that she did not drive the car; that in their household lived his mother and father and several boarders; that he and his folks had had the car involved in this accident about a year and a half; that Stetz had been driving it all that time and no one else drove it; that the car was bought for him; that he drove it if and when he wanted to of his free will; that he was not in school when the accident happened as he had graduated from the Sheridan High School in 1946; that he had the car just after he graduated, it being, in a way, given to him as a graduation present; that his mother never did drive the car; that at the time of the accident he was going up to the air port to do some flying; that he had no air plane but he had worked at the air port for more than five years; that he was not working for the air port folks on the day of the accident but was going to fly Arch Hall's plane.

On direct examination he had previously stated that he was on his way to the air port to go flying and that he was not on any errand or anything of that sort for his mother; that it was entirely his own affair to arrive at the air port. In appellants' brief it is said that there is:

"presented to this Court by this case the question as to whether or not the 'family-purpose doctrine' applies in Wyoming. There is no other issue in the case."

Both parties to this record have thus presented the matter in brief work, and appellants by their counsels' argument also. We will, accordingly, examine the question adhering to that view of the case.

The common and almost universal use of the automobile in this country has brought into existence one of the most controversial doctrines in the law of tort, agency, and master and servant. That doctrine has been variously designated as the "family purpose doctrine", the "family service rule", the "family automobile doctrine" or the "family car rule".

5 Blashfield's Cyclopedia of Automobile Law and Practice (Perm. Ed.) pp. 266-267, Section 3111 states this rule as follows:

"When an automobile is maintained by the owner thereof for the general use and convenience of his or her family, such owner is liable for the negligence of a member of the family, having general authority to drive the car, while it is being used as such family car; that is, for the pleasure or convenience of the family or a member of it."

The underlying theory advanced in support of the rule seems to be substantially as follows: That every man who undertakes to conduct his affairs through others should remain bound to so manage them that third persons will not be hurt by any breach of legal

duty on the part of the others so entrusted with his concerns while they are engaged upon his affairs and within the scope of their authority, and that when a paterfamilias maintains an automobile for the pleasure, use, and convenience of his family and in furtherance of such purpose authorizes members of his household to use it for that purpose he ipso facto makes such pleasure his affair or "business" and makes members of the family operating the car for uses of this character his agents engaged in the conduct of his affairs. O'Keefe vs. Fitzgerald, 106 Conn. 294, 137 Atl. 858; Stickney vs. Epstein, 100 Conn. 170, 123 Atl. 1.

However, a considerable majority of the appellate courts of the nation have declined to recognize the family purpose doctrine described above. Without in any degree undertaking to be exhaustive in the matter, their reasoning is very well illustrated by the language of certain cases which have been very frequently cited and which we shall now briefly review:

The Kansas Supreme Court in Watkins vs. Clark, 103 Kans. 629, 176 Pac. 131 has expressed its views concerning the problem thus:

"The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and strange, and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse, this view had to be abandoned. The notion, however, of general liability on the part of the owner for use of his car having been planted in the mind, it lingered there like a superstition. Courts were reluctant to ignore it, and as a result, an adaptation of the law of

master and servant, and principal and agent, was resorted to, to explain the liability. If a man purchased an automobile and allowed his wife and his son and his daughter to use it, the use was his by virtue of representation, whether representation existed in fact or not. The deduction was facilitated by employment of the fine art of definition—putting into the definition of the term 'business' the attributes necessary to bolster up liability. So, if daughter took her friend riding, she might think she was out purely for the pleasure of herself and her friend, but she was mistaken; she was conducting father's 'business' as his 'agent'. As this incongruity became more and more apparent, a further concession was sometimes made. If the owner allowed a member of his family to use the automobile, he might not be liable, but it was 'presumed' the use was his by representation. If son took his best girl riding, prima facie it was father's little outing by proxy, and if an accident happened, prima facie father was liable. Some courts were inclined to get rid of the difficulty of resting liability on the one existing fact, ownership of the car, by declaring that the question of 'agency' was one for the jury, a process known in some quarters as 'passing the buck'. The sooner the courts settle down and deal on the basis of fact and actuality with a vehicle which has revolutionized the business and the pleasure of the civilized world, the better it will be, not only for society, but for the courts."

In Arkin vs. Page, 287 Ill. 420, 123 N. E. 30 the Supreme Court of Illinois after pointing out that:

"A parent is not liable for the tort of his minor child merely from the relationship. There is no evidence or claim that George J. Page was not a competent chauffeur. An automobile is not so dangerous an agency as to make the owner liable for injuries caused by it to travelers on the highway, regardless of the agency of the driver. (Citing authorities). The owner of an automobile who merely permits another to use it for his own purposes is not liable for the negligence of the borrower in the use of the machine. (Citing authorities). The owner of an automobile is not liable for an injury occasioned by the negligent use of the machine by his servant if the servant was

at the itme at liberty from the service of his master and not engaged in doing his master's business but was pursuing his own interests exclusively. (Citing authorities.)"

said also:

"It seems rather a fantastic notion that a son in using the family automobile to take a ride by himself for pure pleasure is the agent of his father in furnishing amusement for himself, is really carrying on his father's business, and that his father, as principal, should be liable for the result of the son's negligent manner of furnishing the entertainment to himself. It is said in the case of Hays v. Hogan (273 Mo. 1, 200 S. W. 286) supra, that—

" 'That creation of the relation of master and servant should not be based upon the purpose which the parent had in mind in buying the automobile and the permissive use by a member of his family. One might keep an automobile for the use of the members of a club, the students of a certain school, the residents of a certain town, or for the general public; yet who will say, in case he permits such persons to use the machine and they injure a third party, that the relation of master and servant existed, and that, in using the automobile for one of the purposes for which it was bought, the club man or the student, or a member of the general public, was in the business of the owner, and that he is therefore, liable for their acts.'

"The proposition announced is that a father, by the furnishing of the means of amusement to his family, has made their amusement his business, so that each member of the family, in using for his own personal enjoyment, upon his own initiative, any of the means so furnished, though engaged exclusively in the pursuit of his own peculiar ends, without the direction, control, advice, consent, or knowledge of any other person, is still engaged, as agent, in carrying on the business of another. If the son is his father's agent to amuse himself with an automobile, he must also be a like agent for his own amusement with bicycles,

horses, and buggies, guns, golf clubs, baseballs and bats, row boats and motor and sail boats, if these should happen to be provided, and if, in carrying on his father's business by the use of any of these articles, as his father's agent, to amuse his father's son, he should negligently injure any one, his father would be liable as principal. Such a refinement of reasoning has not been recognized until since the advent of the automobile or in the case of any other instrumentality. A parent who has permitted his child to have firearms or use horses for his own amusement has not been held liable for the child's negligence in using them as the father's agent."

The elaborate opinion of the Supreme Court of Delaware in Smith vs. Callahan, 4 W. W. Harr. (Del.) 129, 144 Atl. 46 uses the following apt language:

"it is apparent that, not parenthood or the being a family head, but the gratuitous act of supplying a car for the family use is the thing out of which the law creates the agency. How then can the reason which fastens liability on the father who supplies a family car fail to fasten a like liability on any other competent member of the family for doing the same thing? If as some of the courts say, the father who furnishes a car for the use of the family does so in order that they might use it to transact his business, to wit, the business of entertaining or giving pleasure to themselves, we are unable to see why it may not with equal force be said that if any other member of the family supplies a car for the family use, he also has voluntarily made the entertainment, convenience and pleasure of the family his business. If liability for negligent operation of the car is incurred in the one case, we are unable to see why it should not be incurred in the other. Indeed, in point of logic and reason it is difficult to see why a bailor of an automobile may not with an equal show of plausibility be held to the same liability for the negligent conduct of his bailee in the car's operation, for it would seem that if one lends his car to a friend to use for his own pleasure, he has done nothing more than the head of a family does when he lends his car to his wife or children to

use for their pleasure. If the lending of the car in the latter case can be said to be in the furtherance of the father's business of pleasing and entertaining his family, the lending of the car to the bailee in the former case can with equal force, it would seem, be said to be in the furtherance of the bailor's business of pleasing or conveniencing his friend. Yet, so far as we are advised no court has ever gone so far, nor we believe ever will go so far, as to say that a bailor of an automobile is responsible for its tortious operation by his bailee."

The court further reasoned:

"But, after all, can it be said that when a father becomes an owner of an automobile and allows the members of his family to use it, they, when they are out riding for their own convenience and pleasure and often without even his knowledge, can be said to be transacting his business? Notwithstanding the volume of eminent judicial opinion to the contrary, we are unable to bring our minds to the conclusion that in pleasing themselves the members of the family can be said to be acting as agents in transacting or furthering the business of the head of the family. That the pleasure, comfort and convenience of the members of a man's household are matters of concern to him cannot of course be denied. This concern is not alone collective in its operation. It is individual and personal, and applies as well to each of the family members as to the collective group. We agree entirely with those courts which hold that no sound distinction in reason can be drawn between those cases where only one member of the family is engaged in serving his pleasure by driving a car alone and those where more than one member of the family are in the vehicle, for if the father's business is being transacted in the latter case it is likewise being transacted in the former. Now if one member of the family is transacting the business of the family head when he is serving his own individual purposes by using the instrumentality of an automobile supplied by a father for the family's entertainment, why would he not be similarly transacting the father's business if he used for his own entertainment or recreation any other in-

strumentality supplied by the father for that purpose? Among a great variety of instrumentalities purchased by a father for the use of any or all members of his family as the means of entertainment, pleasure and convenience, certainly it would be difficult for reason to assign to one a character indicative of business employment in the father's behalf and deny such character to others. Thus if a son in using his father's automobile for his own pleasure with his father's consent can be said to be engaged in acting as his father's agent or servant in the furthering of his father's business, he must, it would seem, be acting in a like vicarious capacity if he used for his own pleasure any other article supplied by his father for his entertainment. We can see no escape from this conclusion. And yet we venture to assert courts which apply the logic to the case of an automobile, would hesitate long before applying it to the case of a baseball bat for instance supplied by a father for the recreation of his boys. Imagination might run on indefinitely and suggest other instrumentalities supplied by fathers and heads of families for the use of all or a part of the members of his household, but which courts would be most reluctant to say were being employed in the father's business when being used for the purposes they were intended to serve."

In Parker vs. Wilson, 179 Ala. 361, 60 So. 150 the Supreme Court of Alabama discussing the "family automobile rule" supra declares that:

"The doctrine contended for amounts to this: That the pleasure of the family in its utmost detail is the business of the father. As applied to the case at hand, it means that the son, in pursuit of his own pleasure, with an automobile owned by his father, was engaged in the business of the father. But the doctrine, we think, has no firm foundation in reason or common sense. In theory it overlooks well-settled principles of law; in practice it would interdict the father's generosity, and his reasonable care for the pleasure or even the well-being of his children, by imposing an universal responsibility for their acts. As said in Doran v. Thomsen, 76 N. J. Law, 754, 71 Atl. 296, 19 L. R. A. (N. S.) 335, 131 Am. St. Rep. 677: 'It

would subject a parent to liability if he bought for his son a baseball or for his daughter a golf club, and, by permitting them to be used by his children for their appropriate purposes, injury occurred. It bases the creation of the relation of master and servant upon the purposes which the parent had in mind in acquiring ownership of the vehicle and its permissive use by the child. This proposition ignores an essential element in the creation of that status as to third persons, that such use must be in furtherance of, and not apart from, the master's service and control, and fails to distinguish between a mere permission to use and a use subject to the control of the master and connected with his affairs.' "

The New York Court of Appeals in Van Blaricom vs. Dodgson, 220 N. Y. 111, 115 N. E. 443 has very well said:

"On its face a proposition seems to be self-contradictory which asserts that a person who is wholly and exclusively engaged in the prosecution of his own concerns is nevertheless engaged as agent in doing something for some one else. It has always been supposed that a person who was permitted to use a car for his own accommodation was not acting as agent for the accommodation of the owner of the car. (*Reilly v. Connable*, 214 N. Y. 586.) The attempt is made, however, to reconcile these apparently contradictory features of this proposition by the assertion that the father had made it his business to furnish entertainment for the members of his family and that, therefore, when he permitted one of them to use the car, even for the latter's personal and sole pleasure, such one was really carrying out the business of the parent and the latter thus became a principal and liable for misconduct.

"This is an advanced proposition in the law of principal and agent, and the question which it presents really resolves itself into the one whether, as a matter of common sense and practical experience, we ought to say that a parent who maintains some article for family use and occasionally permits a capable son to use it for his individual convenience ought to be re-

garded as having undertaken the occupation of entertaining the latter and to have made him his agent in this business, although the act being done is solely for the benefit of the son. That really is about all there is to the question. Not much can be profitably said by way of amplification or in debate of the query whether such a liability would rest upon reasonable principles or whether it would present a case of such theoretical and attenuated agency, if any, as would be beyond the recognition of sound principles of law as they are ordinarily applied to that relationship. The question largely carries on its face the answer, whichever way to be made. Unquestionably, an affirmative answer has been given by the courts of some states. (Citing authorities.) But it seems to us that such a theory is more illusory than substantial, and that it would be farfetched to hold that a father should become liable as principal every time he permitted a capable child to use for his personal convenience some article primarily kept for family use. That certainly would introduce into the family relationship a new rule of conduct which, so far as we are aware, has never been applied to other articles than an automobile. We have never heard it argued that a man who kept for family use a horse or wagon or boat or set of golf sticks had so embarked upon the occupation and business of furnishing pleasure to the members of his family, that if some time he permitted one of them to use one of those articles for his personal enjoyment, the latter was engaged in carrying out not his own purposes, but, as agent, the business of his father."

The opinion in the case was concluded with a statement of the views of the court as follows:

"And in the present case it is in effect argued that because the use of an automobile upon a highway may be dangerous, and, therefore, is a privilege subject to license by the state, the courts can apply a different rule of agency to its use than would or could be applied to the case of the other articles which have been mentioned. This kind of argument, as it appears to us, discloses the novelty and weakness of the proposition which is being urged upon us. It seems to disclose the

idea, as an essential part of the argument, that because an automobile is different than a horse or boat, some advanced rules ought to be applied to its use. But the rules of principal and agent are not thus to be formulated. They are believed to be constant and not variable in response to the supposed exigencies of some particular situation. The question whether one person is the agent of another in respect of some transaction is to be determined by the fact that he represents and is acting for him rather than by the consideration that it will be inconvenient or unjust if he is not held to be his agent. If, contrary to ordinary rules, the owner of a car ought to be responsible for the carelessness of every one whom he permits to use it in the latter's own business, that liability ought to be sought by legislation as a condition of issuing a license rather than by some new and anomalous slant applied by the courts to the principles of agency.

"These views, which seem to us to be supported by principle and reason, also find authority directly and indirectly in the following decisions: (Citing many cases.)"

Similarly in Gordon vs. Rose, 54 Ida. 502, 33 Pac. 2d 351 we find the appellate court of the state of Idaho in accord with what was said by the New York Court of Appeals regarding the question as being one to be resolved by the law making power. We read in the Idaho case this language used:

"It may be true that as a matter of public policy the head of a family who purchases an automobile and permits the various members of the family, regardless of age or responsibility, to use the same unrestrained, should be required to assume the risk and held responsible for the acts of his household when driving the car, regardless of the purpose for which the car is being used. Courts, generally, now say that the automobile is not a dangerous instrumentality. That being true, if the principle of respondeat superior is not applicable to hold the head of a family responsible when a member of the family is using the automobile for his own purposes—and we do not think

the principle is applicable—the only available ground left to justify the courts in applying the doctrine is one of policy. If this question of applying the family purpose doctrine is one of conflicting considerations of policy, and it would so appear, it is properly for the Legislature to determine that policy, and not for the courts to do so by distorting basic principles of agency and torts. For a discussion, see 28 Harvard Law Review 91; 19 Michigan Law Review 543; 25 Michigan Law Review 187."

It may here be properly noted that in the states of Illinois, Missouri, Oklahoma, and also in Texas where decisions had theretofore been rendered accepting the family car doctrine, the ultimate stand of the appellate courts in these jurisdictions in later cases repudiated the earlier rulings as unsound and accordingly rejected the family purpose doctrine. 60 C. J. S. 1067-1068, Section 433, Note 72 and cases cited.

5 Am. Juris. 707, Section 368 comments on the fact that:

"It will be noted in this connection that several of the jurisdictions which support the family purpose doctrine either do not recognize it in cases where the car is being driven by a child for his or her own purpose, or are very strict in limiting its application in such instances."

In 4 Sherman and Redfield on Negligence (Rev. Ed.) 1628, Section 690 after remarking that:

"It has been said that, when an automobile is being used by a member of the family other than the owner, but with the owner's consent, he should not be heard to say that such other is not his agent or servant."
says that:

"Another line or cases, holding the owner not liable under those circumstances, rests upon a sounder logical basis. 'On its face a proposition seems to be self-con-

tradictory which asserts that a person who is wholly and exclusively engaged in the prosecution of his own concerns is nevertheless engaged as agent in doing something for some one else. . . . The question whether one person is the agent of another in respect of some transaction is to be determined by the fact that he represents and is acting for him rather than by the consideration that it will be inconvenient or unjust if he is not held to be his agent.' "

In the note to this excerpt (p. 1629) the text quotes from the case of Schneider vs. Schneider, 160 Md. 18, 21, 152 Atl. 498, as follows:

"The mere fact that it may afford an owner pleasure and satisfaction to have members of his family transported in his car, entirely on their own affairs, does not render their expedition his business, so that he will be liable for the results of negligence in its conduct."

Our attention has been directed by appellants to an article in 24 Va. Law Rev. 931. The author of that article concludes his extended discussion of the effect of the then recently decided case of Hackley vs. Robey, 170 Va. 55, 195 S. E. 689 (1938) upon the Virginia law relative to the "family purpose" rule in that state with these words:

"Whether or not this decision of the Virginia court is justifiable on legal principle or desirable as a matter of policy is not within the purview of this discussion. However, it is in line with the weight of authority, which is now clearly opposed to the doctrine as herein strictly defined: twenty-six other courts, including all the more persuasive, have rejected and only fifteen adopted it, and the tendency to return to strict agency principles has been particularly noticeable in recent years. This is illustrated by the refusal of the American Law Institute to incorporate the doctrine into its Restatement of Agency."

Section 238 Restatement of the Law of Agency, comment "c" says:

"A child may pursue his own private affairs as distinguished from the business of his parent, and if in such case he is using the family automobile by permission of his father, he is in a position of a bailee rather than of a servant."

28 Harvard Law Review 91, 93 in the concluding paragraph of a discussion concerning the family purpose doctrine relative to automobiles, questioning the view:

"that, as automobiles have latent possibilities of causing great damage, and yet are treated almost disrespectfully by the youngest children, as a matter of justice the owner should be absolutely liable for injuries inflicted,"

declared that:

"Such a rule might have a salutary effect, but its creation is within the province of the legislatures, not of the courts, and should not be arrived at by distorting the principles of agency and torts to fit the case. Let not the ancient maxim be transformed to read, *Qui facit per auto facit per se.*"

16 Notre Dame Law. 394, 395 referring to the jumble of judicial views on the family purpose doctrine asserts that:

"The source of the conflict exists in extending the principle of master and servant to such an extent. The twenty-six jurisdictions rejecting the doctrine, do so because in the opinion of their courts the principles of master and servant cannot be stretched so far as to hold that a member of the family using the car for the purpose intended by the father, pleasure, is the agent of the father."

Thereafter quoting some of the critical language we have excerpted above from Arkin vs. Page, supra, this is then said:

"This criticism is strengthened when we consider that even though Minnesota applies the Family Purpose Doctrine, it refused to apply it in the case of a motor-

boat, (Felcyn v. Gamble, 185 Minn. 357, 241 N. W. 37, 79 A. L. R. 1159 (1932) even though furnished by the head of the family for the pleasure of the family. In short, Minnesota says that a son driving the family car for his own pleasure is the agent of the father, if the car was meant for the family's pleasure. But the son is not the agent of the father if it is a motorboat instead of an automobile, even though the motorboat be furnished for the pleasure of the son. When one considers contradictions such as this, it becomes apparent that the Family Purpose Doctrine is not as much an extension of the principles of master and servant as it is an attempt to fix liability on one able to meet it."

In 6 Nat. Bar Journal 263, 265, 267 (1948) there is set forth this further criticism supplementing the others given above in opposition to the family car rule: "After a careful review of the theories on which the family purpose doctrine is predicated and their application, the following question might be raised; i. e. *whether a member of the family on a mission for his personal pleasure is in the same position as any other bailee? Spence v. Fisher* (184 Cal. 209, 193 Pac. 255), gives a sound answer to the question raised, Chief Justice Angellotti states: 'In such a situation we would have simply a permissive use of the father's car by another solely on that other's business practically the same use of the owner's automobile that is had by one not a member of his family.' The conclusion of this court should be approved unless it can be logically said that the family relation of the parties is sufficient to justify this transgression of tort, and agency law. One ought not be held for the torts of another unless they stand in such relation of privity that the maxim *qui facit per alium facit per se* applies.

*"Another question for consideration is whether a household member driving an automobile owned by the head of the family is in the position of a servant is the master-servant relationship read into the situation?* When the automobile is so furnished many courts have read into the situation a master and servant, or principal and agent relation. The head of the family being the master, or principal, the family members being the

servants, or agents. The business contemplated in behalf of the master or principal, being the entertainment. The thing that makes this conclusion unacceptable is the fact than an agent or a servant is engaged in doing something to further the interest of his master, or principal, but in the situation covered by the family purpose doctrine the agent acts for his sole personal benefit."

Recalling the abstract of the defendant, Stetz' cross examination, it will be observed that this minor was the driver of the car which caused the collision, for his own purposes and pleasure and not on account of any family errand, for his mother or anyone in the household. He was always the operator of the car and no one else in the family undertook to use it. Who supplied the necessary oil, gasoline, and service repairs is not shown by the record before us. So far as the use of the vehicle is concerned Raymond Stetz was the real owner of the car and no one aside from him undertook to operate it.

Without further extending this opinion—and several volumes of material could readily be assembled in discussing the subject, we conclude on the above cited authorities as well as many others we have carefully examined and studied, that the question presented in this case should be treated as one of state policy purely and as such to be disposed of by the legislature of this state as it may hereafter see fit to do. We must decline to do violence, as we view the record herein, to long and clearly established rules in the fields of agency and master and servant. We have noted that the Idaho and New York decisions quoted from above suggest, and as we think, properly so, precisely that course of procedure.

The ruling of the District Court of Sheridan County should and will accordingly be affirmed in its action

declining to enter a judgment against Mary Podorski. Other points have been urged in the case, but in view of the result we have reached we deem it unnecessary to examine them.

*Affirmed.*

KIMBALL, J. and BLUME, J., concur.