833 P.2d 109

Alex W. FULLER and Lorinda Fuller individually and Alex W. Fuller and Lorinda Fuller as General Guardians for Nina Fuller, a minor, Plaintiffs–Appellants,

v.

Andy STUDER and Christina Studer, husband and wife, Defendants–Respondents,

and

John Does 1–5, Defendants.

No. 19281.

Supreme Court of Idaho,
Twin Falls, April 1992 Term.

June 18, 1992.

Wood & Shaw, Pocatello, for plaintiffs-appellants. Steven W. Shaw, argued.

Brady Lerma Chtd., Boise, for defendants-respondents. Rebecca A. Broadbent, argued.

McDEVITT, Justice.

This case arises out of a snowmobile accident. Plaintiff Nina Fuller was injured by a snowmobile operated by the defendants' three-year-old daughter. The plaintiffs brought suit alleging that the defendants were negligent in leaving unattended a snowmobile with the engine running near their three-year-old daughter. While unattended, the three-year-old daughter climbed upon the snowmobile, pressed the throttle, and ran over the plaintiff Nina Fuller, causing severe injuries. Plaintiffs base their claim on the theories of negligent supervision and negligent entrustment. The district court granted summary judgment in favor of the defendants. We affirm.

## FACTS

The parties do not dispute the facts. On February 20, 1988, the defendant, Andy Studer, and his father-in-law, Charles Seager, took Studer's three-year-old daughter, Barbara, and three other children snowmobiling at Pomerelle Ski Area. The snowmobiles involved were a Polaris owned by Mr. Studer and a John Deere owned by Mr. Seager. After giving the children rides on the snowmobiles, Studer and Seager returned to the pickup truck to load the snowmobiles onto the trailer.

When Seager returned to the pickup, he got inside the pickup to rest. Studer returned and took Seager's John Deere for a short ride. After Studer returned from riding the John Deere, he tried to load the Polaris by himself, but a ski got entangled with a cable attached to the trailer, so Seager tried to assist Studer in loading the Polaris. As Studer was driving the Polaris onto the trailer, it threw mud and snow on the John Deere. Seager brushed the snow and mud off the John Deere and then drove the John Deere ahead of the trailer, where he left it with the motor running.[1] Stu-

---

1. It is unclear whether Studer had left the John Deere running after he returned to the pickup. Studer's affidavit states that Seager had to start the snowmobile in order to move it ahead of the trailer. Seager cannot remember whether Studer left the motor running or if he had to start it in order to move it out of the way. It is undisputed that it was Seager who left the John Deere

der's three-year-old daughter Barbara then climbed upon the John Deere and pressed the throttle. The snowmobile took off and eventually went over an embankment and ran over seven-year-old Nina Fuller. Nina received severe and permanent injuries as a result of the accident. Barbara was not injured.

The Seagers were dismissed from the lawsuit by stipulation of the parties. The defendants' motion for summary judgment was granted by the district court. The district court ruled that the facts lacked any indication that Studer "entrusted" Barbara with the snowmobile and that there was no evidence indicating Barbara's propensity or proclivity for climbing on a snowmobile. Hence, there were insufficient facts to support either theory of negligent entrustment or negligent supervision.

The plaintiffs then filed a motion for reconsideration. In support of this motion, the plaintiffs filed affidavits from two expert witnesses. These experts stated that a normal three-year-old would be attracted to a snowmobile and would "experiment" with it. This evidence was submitted to counter both Studer's and Seager's affidavits which stated that the Studer children were not allowed to drive or even play upon the snowmobiles nor were Studer or Seager aware of the children ever playing on the snowmobiles. The trial court denied plaintiffs' motion for reconsideration and the plaintiffs appeal.

On appeal, we must determine: (1) if the trial court erred in granting summary judgment on the issue of negligent entrustment; and (2) if the trial court erred in granting summary judgment on the issue of negligent supervision.

## I. STANDARD OF REVIEW

In an appeal from a motion for summary judgment, this Court's standard of review is the same as the standard used by the trial court in passing upon a motion for summary judgment. *McDonald v. Paine,* 119 Idaho 725, 810 P.2d 259 (1991); *Meridi-*

*an Bowling Lanes v. Meridian Athletic,* 105 Idaho 509, 670 P.2d 1294 (1983). All facts and inferences from the record will be viewed in favor of the nonmoving party to determine whether the motion should be granted. *Treasure Valley Bank v. Butcher,* 117 Idaho 974, 793 P.2d 206 (1990); *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986); *Farmers Ins. Co. of Idaho v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976). The burden of proving the absence of material facts is upon the moving party. *Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 452 P.2d 362 (1969). However, the adverse party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e); *Anderson v. City of Pocatello,* 112 Idaho 176, 731 P.2d 171 (1987). A mere scintilla of evidence is insufficient to create a material issue of fact. *Id.* Judgment shall be rendered if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact. I.R.C.P. 56(c); *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982).

The elements of an action based upon negligence are: "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Alegria v. Payonk,* 101 Idaho 617, 619, 619 P.2d 135, 137 (1980); *Brizendine v. Nampa Meridian Irrigation Dist.,* 97 Idaho 580, 583, 548 P.2d 80, 83 (1976). Typically, issues of negligence ordinarily present questions of fact for a jury to resolve. *Johnson v. Stanger,* 95 Idaho 408, 510 P.2d 303 (1973). Therefore, summary judgment should not be granted unless only one reasonable conclusion can be drawn from the facts. *Keller v. Holiday Inns, Inc.,* 107 Idaho 593, 691 P.2d 1208 (1984).

## II. NEGLIGENT ENTRUSTMENT

■ The plaintiffs urge that Studer negligently entrusted the snowmobile to Bar-

running immediately before Barbara climbed upon it.

bara. To support their theory of entrustment, the plaintiffs rely upon the fact that Barbara was allowed to remain in close proximity to the idling snowmobile and that a three-year-old would have a natural proclivity to climb upon and play with a snowmobile.

One of the first cases in Idaho to discuss the tort of negligent entrustment is *Kinney v. Smith*, 95 Idaho 328, 508 P.2d 1234 (1973). *Kinney* does not provide us with much detail as to the specific elements of the tort. Recently, we stated that negligent entrustment is a particularized application of the general principles of negligence law. *Olguin v. City of Burley*, 119 Idaho 721, 810 P.2d 255 (1991). Essentially, the term "entrustment" characterizes the duty of care to be applied in evaluating an alleged tort-feasor's conduct.

The crucial element of this tort is "the legal right to 'control' the thing entrusted which gives rise to the duty in negligent entrustment" and that in exercising control over the thing entrusted a plaintiff need not show that the defendant placed the instrument in "the hands of a child," but that the defendant acted "in a manner that it became likely a child would come into possession of it and use it in such a manner as to create an unreasonable risk of harm to others." *Ransom v. City of Garden City*, 113 Idaho 202, 207, 743 P.2d 70, 75 (1987). While "control" usually means legal ownership, the paramount requirement is a person's right to control, even if the person is not the legal owner. *Lopez v. Langer*, 114 Idaho 873, 761 P.2d 1225 (1988).

In this case, the John Deere snowmobile was legally owned by Mr. Seager, who had been driving for most of that day. While Mr. Studer had also driven the John Deere the day of the accident, the affidavits indicate that it was Mr. Seager who had left the snowmobile with the motor running in close proximity to Barbara. It appears that it was Mr. Seager who "controlled" the John Deere snowmobile, Mr. Studer did not have the necessary right to control the snowmobile to impose liability for negligent entrustment. The district court did not err in granting summary judgment on this issue.

### III. NEGLIGENT SUPERVISION

In addition to their claim of negligent entrustment, the plaintiffs further contend that Studer was negligent in the supervision of his daughter Barbara. Plaintiffs argue that this breach of the duty to supervise is a proximate cause of Nina's injuries.

In order to address the issue of negligent supervision, first we recognize the common law rule that parents are not responsible for the torts of their children. *Gorden v. Rose*, 54 Idaho 502, 33 P.2d 351 (1934); *see also Parsons v. Smithey*, 109 Ariz. 49, 504 P.2d 1272 (1973); *Ellis v. D'Angelo*, 116 Cal.App.2d 310, 253 P.2d 675 (1953); *Herndobler v. Rippen*, 75 Or. 22, 146 P. 140 (1915). In *Gorden*, this Court rejected an argument that would have imposed liability upon parents for a child's negligence based upon the theory of the "family purpose doctrine." We recognized in *Gorden* that imposing liability in this area would be best handled by the legislature and not by the courts. *Gorden*, 54 Idaho at 512–13, 33 P.2d at 355.

Subsequent to the *Gorden* decision, the Idaho Legislature recognized that it is contrary to public policy to hold parents vicariously liable for the torts of their children by enacting I.C. § 6–210. This section holds parents liable for economic losses "willfully caused" by a minor child still living with the parents, but only up to a maximum of $2,500. Subsection (2) of the statute disallows recovery for "less tangible damage such as pain and suffering, wrongful death, or emotional distress." The effect of this statute is to prohibit imposing vicarious liability upon the parents for a child's negligent conduct.

■ While it could be argued that the doctrine of negligent supervision is just an abrogation of I.C. § 6–210, this is not the case. Negligent supervision is an action based upon the independent act of negligence on the part of a parent in failing to exercise the proper control of a minor child. *Bankert by Habush v. Thresherman's*

*Mut. Ins. Co.,* 110 Wis.2d 469, 329 N.W.2d 150 (1983); *Moore v. Crumpton,* 306 N.C. 618, 295 S.E.2d 436 (1982). Like the related tort of negligent entrustment, the term "supervision" characterizes the duty of care imposed upon a person, such as in the parent-child context.

This Court has never dealt directly with the issue of liability to a third party based upon a parent's negligent supervision of a child. This Court has held that parent-child immunity prevents a child from suing his parents for negligent supervision, *Pedigo v. Rowley,* 101 Idaho 201, 610 P.2d 560 (1980), and that parents may not personally profit from the negligent supervision of their children. *Jacobsen v. Schroder,* 117 Idaho 442, 788 P.2d 843 (1990). (If parents bring action in their own name for damages arising from injuries to a child, parents award can be reduced by the percentage of their negligence in supervising the injured child.)

In other contexts, this Court has recognized this tort. In *Bauer v. Minidoka School Dist. No. 331,* 116 Idaho 586, 778 P.2d 336 (1989), this Court held that material issues of fact existed precluding summary judgment, therefore remanding a case based on the negligent supervision of a student by the school district. In *Walker v. Shoshone County,* 112 Idaho 991, 739 P.2d 290 (1987), this Court remanded a case based upon the negligent supervision of a 17–year–old prisoner by the county officers in charge of the county jail.

The most informative case in Idaho concerning negligent supervision is *Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986), where this Court held that the State can be held liable for parole officer's negligent supervision of a parolee. In *Sterling* we stated that "one who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the

third person to prevent him from doing such harm." *Sterling,* 111 Idaho at 225, 723 P.2d at 769.

■ Expanding the *Sterling* rationale to the parent-child context, a parent who has knowledge of a minor child's propensity for a particular type of harmful conduct is under an affirmative duty to guard against the foreseeable consequences of that specific propensity.[2] Thus, this duty requires a two-step analysis. First, the court must look to see whether a parent has knowledge of a minor child's propensity or proclivity for a specific harmful conduct. If the first step is answered affirmatively, then it must be determined whether the parent took reasonable steps to guard against the foreseeable consequences of the minor child's propensity for the specific harmful conduct.

■ In support of their motion for summary judgment, the defendants filed the affidavit of Mr. Studer and Mr. Seager. Both affiants stated that they were unaware of any propensity of Barbara to climb upon and play on a snowmobile. The plaintiffs did not dispute these affidavits. Therefore, there was no genuine issue of material fact to show that Mr. Studer knew of Barbara's propensity to climb upon and play on a snowmobile. The trial court did not err in granting summary judgment on this issue.

## CONCLUSION

We hold that the trial court did not err in granting summary judgment on the issue of negligent entrustment or negligent supervision. The trial court's decision is affirmed.

Costs to respondents.

BAKES, C.J., JOHNSON, J., and REINHARDT, J. Pro Tem., concur.

---

**2.** Other jurisdictions have held similarly. *See Alioto v. Marnell,* 402 Mass. 36, 520 N.E.2d 1284 (1988); *Eldredge v. Kamp Kachess Youth Services, Inc.,* 90 Wash.2d 402, 583 P.2d 626 (1978); *Cooper v. Meyer,* 50 Ill.App.3d 69, 7 Ill.Dec. 916, 365 N.E.2d 201 (1977); *Parsons v. Smithey,* 109

Ariz. 49, 504 P.2d 1272 (1973); *Linder v. Bidner,* 50 Misc.2d 320, 270 N.Y.S.2d 427 (1966); *Gissen v. Goodwill,* 80 So.2d 701 (Fla.1955); *Ellis v. D'Angelo,* 116 Cal.App.2d 310, 253 P.2d 675 (1953).

BISTLINE, Justice, dissenting.

The district court erred in granting summary judgment for the defendants. There is most definitely an issue of material fact that should have been entrusted to a jury to decide. The issue of fact is whether the Studers' three year old daughter, Barbara, had any tendencies or proclivities that would cause her father to be aware of where she was and what she was doing while in the proximity of an idling snowmobile. This issue is crucial to both the negligent entrustment and negligent supervision theories of recovery advanced by plaintiffs, though it is more crucial to the latter. It is clear that the negligent entrustment theory might have been readily sustained if the Seagers had not been dismissed from the action. In addition to the majority's failure to recognize the existence of a triable issue of material fact, they erroneously rely on I.C. § 6–210 to construct an argument against the viability of plaintiffs' negligent supervision theory of recovery.

## PART I

In part I of their opinion, the majority properly acknowledges that in a summary judgment motion, all facts and inferences from the record should be liberally construed in favor of the nonmoving party and that such motion should not be granted unless only one reasonable conclusion can be drawn from the facts. *Keller v. Holiday Inns, Inc.*, 107 Idaho 593, 691 P.2d 1208 (1984).

The pertinent facts of this case are that a three year old child had been taken on a snowmobiling excursion under the care and supervision of her father and grandfather. The child obviously was aware of how to climb onto and straddle the snowmobile, operate the throttle to propel the machine forward and perhaps even steer it.[3] It is not clear whether the child gained this knowledge on the day of this excursion and ensuing disaster or from previous experiences and excursions.

The majority opinion contends that "both Studer's and Seager's affidavits ... stated that the Studer children were not allowed to drive or even play upon the snowmobiles nor were Studer or Seager aware of the children ever playing on the snowmobiles." Closer examination of the affidavits shows that Seager did in fact disavow any knowledge of three year old Barbara Studer playing on his or any other snowmobile, and

---

**3.** This excerpt from the statement of Charles Seager, executed on October 10, 1988, aptly demonstrates there is a triable issue of fact surrounding three year old Barbara Studer's proclivity for climbing on or playing with the snowmobile. Mr. Seager describes actions indicative of a certain level of understanding by a three year old that make it reasonable to conclude that she might have played on the snowmobile a few times before. Barbara's behavior, in combination with the statements of expert witnesses, could give rise to a reasonable conclusion about the child's tendencies that is different from the district court's. After reading this excerpt it is clear that a jury should decide whether she was able to operate the snowmobile in such a manner without exercising prior proclivities.

> We had been giving them rides during that day. The snowmobile is equipped with a throttle that is used by pushing against it with the right thumb. It is ran by centrifugal force belt. It will idle if let sit. *You have to put the throttle in before the clutch will engage.* The throttle is pretty stiff and it takes a little bit to push it.... I don't remember if Andy left my machine running or if he shut it off and I started it to move it out of the way. At any

rate, it was running and there was no one on it. I turned back to Andy's machine and was going to help pull it backward, out of the cable. The kids were standing around in various places. I don't know if we said anything to them about staying away from the machine. Both of our backs were to my snowmobile when Barbara, aged 3 at that time, somehow climbed onto my machine. We heard a motor rev and I turned to see who was coming by close to us. I saw my machine taking off. She took off fast enough that we couldn't catch her. Andy tried. She somehow made a left turn and went past a lot of parked vehicles and then made a semi-right turn. She was going pretty fast by now. She isn't strong enough to actually steer it. The parking lot was very rutty and the ruts may have caused it to turn. My unit was about 6 feet away from the trailer when she climbed onto it. The snowmobile went up over the berm along the edge of the lot. I didn't see the accident occur nor did I go over there. She was straddling the seat on the snowmobile as it left.... My machine did not malfunction.... I maintain my machine very carefully and it was in good shape.
(Emphasis added.)

that the only time he knew her to ride on his snowmobile was when an adult was operating the machine. However, Studer's affidavit makes no mention at all of whether he was aware that his daughter played on snowmobiles, or whether he allowed her to play on or drive his or any other snowmobile. Had the majority given closer scrutiny to the affidavits, they would have noted that Mr. Studer did not make any such statement as attributed in their opinion, and they would have realized the implications against summary judgment by his silence on the issue.

In support of their motion for reconsideration of the summary judgment, plaintiffs filed affidavits from two expert witnesses. One was a licensed psychologist, and the other a licensed psychiatrist. Both said it is likely that a three year old child would have a propensity to climb onto an idling snowmobile and experiment with it; particularly after a day of snowmobiling with the family. They also said that the average three year old is naturally learning, exploring, testing and trying things. They are naturally attracted to objects such as snowmobiles because they view them as toys and associate them with having fun. They might climb on and play as though they are driving the snowmobile. Both experts said they relied on their experience as fathers as well as their experience in psychology in making their statements.

Thus there is far more than a scintilla of evidence in support of a triable issue of material fact. There were three significant pieces of evidence before the district court: 1) Mr. Seager's statements of how the three year old handled the snowmobile; 2) the lack of a statement in Mr. Studer's affidavit as to whether he allowed his daughter to drive the snowmobile or was aware that she played on snowmobiles; and 3) the psychologists' statements as professionals and as fathers concerning a three year old's natural tendencies toward an idling snowmobile. In accordance with Idaho summary judgment precedential law, this evidence should be viewed in the light most favorable to the nonmoving parties, the plaintiffs. If precedent is followed, the available admissible evidence most certainly does create an issue of material fact that must properly be decided at trial. The issue, whether Andy Studer knew or should have known that his child had tendencies or proclivities to climb upon and play with an idling snowmobile, is not so black and white as the majority believes. Based upon the briefs and affidavits submitted to the district court, reasonable minds, be they of jurors or the judge at a bench trial, could conclude that Andy Studer knew or should have known of such tendencies in his lively three year old daughter. This issue of fact is crucial to the Fullers' negligent supervision theory of recovery for the injuries caused to their daughter. Thus since more than one reasonable conclusion can be drawn from the facts, summary judgment should not have been granted. *Keller v. Holiday Inns, Inc.*, 107 Idaho at 596, 691 P.2d at 1211.

## PART II

The negligent entrustment theory would have been viable if the original named defendants, Mr. & Mrs. Seager, had not been dismissed from the action. As the majority opinion correctly states in part II of their opinion, Mr. Seager is the party who owned the snowmobile and left it running in close proximity to the child, Barbara Studer. As an owner of that snowmobile, he would be responsible for any injury done to an innocent party by reason of his negligence in allowing an operable snowmobile, with its engine running, to come into the control of some interloping person, be that person intoxicated, *Ransom v. Garden City*, 113 Idaho 202, 743 P.2d 70 (1987), or any person by reason of age not entitled to be in control and/or operation of a vehicle. The record is unclear as to how the plaintiffs came to stipulate that the Seagers be dismissed with prejudice from the lawsuit. Had they been retained as parties in the action, the summary judgment might not have been granted by the district court.

## PART III

In part III of their opinion, the majority relies on I.C. § 6–210 to conclude that

"[t]he effect of this statute is to prohibit imposing vicarious liability upon the parents for a child's negligent conduct." This is an incorrect interpretation of the statute and by so indulging, the majority has misguided itself. The intent of the statute is *not* to preclude vicarious liability, but rather to limit recovery to $2500 against the parents for willful acts of the child. Furthermore, it is inapplicable to this case. Idaho Code § 6–210 clearly applies only to situations where a parent is liable for economic loss *willfully* caused by a minor. No facts whatever have been presented which suggest, indicate, or intimate that three year old Barbara willfully injured the Fuller child, or, that she had any such intent, or that she even knew the child. Further, the issue in the case at bar is not the child's negligence, but rather the father's negligence. The policy implicit in I.C. § 6–210, that of restricting parental responsibility for willful acts by a minor child, cannot be superimposed upon the present situation, where the plaintiffs have asserted an independent basis for finding that the causal negligence in the instant case was attributable to Barbara's father.

### PART IV

Moreover, it is abundantly clear that the snowmobiling experience was a family affair, and hence a joint venture excursion headed by the adult father and the adult grandfather. A jury should properly hear all of the facts from the available witnesses and make a determination as to culpability. Neither the father or the grandfather can so easily be exculpated from all responsibility; it was they who possessed snowmobiles and arranged the outing. That the grandfather has been dismissed from the action is not a bar to his name being placed on a special verdict instruction which inquires as to percentage of fault. *Blankenship v. Weidner*, 120 Idaho 234, 815 P.2d 432 (1991).

Clearly there is a triable issue of fact, and for that reason and in the interests of justice, the judgment of the district court should be reversed and the cause remanded.